IN RE the MARRIAGE OF:
George W. THORPE, Respondent,

v.

Dorothy E. THORPE, Appellant-Petitioner.

Supreme Court

*No. 80–2334. Argued June 1, 1982.—Decided July 2, 1982.*

(Also reported in 321 N.W.2d 237.)

For the appellant-petitioner there was a brief (in this court) and oral argument by *Frank X. Kinast* of Beloit.

For the respondent there was a brief (in court of appeals) by *James E. Welker* and *Brennan, Steil, Ryan, Basting & MacDougall, S.C.,* of Janesville, and oral argument by *Mr. Welker.*

DAY, J. This case is before us on review of an unpublished decision of the court of appeals dated August 17, 1981, which affirmed an amended judgment of divorce of the circuit court for Rock county, Hon. Floyd H. Guttormsen, Reserve Judge.

The original judgment dated June 4, 1979, was appealed. The court of appeals affirmed in part, reversed in part and remanded for further proceedings. The trial court amended its findings of fact and conclusions of law. An amended judgment was filed November 12, 1980. A second appeal was taken. The court of appeals affirmed. This review is of the latter decision of the court of appeals.

The issue in this case is whether that part of the amended judgment of divorce between George W. Thorpe and Dorothy E. Thorpe which divided their property and made no maintenance award to her constituted an abuse of discretion by the trial court. We conclude that there was an abuse of discretion and reverse that part of the amended divorce judgment and remand the case to the trial court for further hearings and findings in light of the criteria contained in secs. 247.255 and 247.26, Stats. 1977.

George W. Thorpe, born March 25, 1909, and Dorothy E. Thorpe, born July 23, 1913, were married in 1959. At that time George Thorpe was fifty and Dorothy Thorpe was forty-six. George Thorpe owned a six-unit apartment building at the time of the marriage. It was subsequently sold and the proceeds used to pay for a duplex that was occupied by the parties and in which George Thorpe lived at the time of the divorce.

Dorothy Thorpe started divorce proceedings in 1964 and stipulated to a property settlement in which she received $4,500 in cash while George Thorpe received the remainder of their property. Five months after the divorce the parties reconciled, and the divorce judgment never became final. By the time of the reconciliation, Dorothy Thorpe had spent most of the $4,500 which she had received in the property settlement. There was testimony that, at the time of the reconciliation, the parties entered into an agreement whereby Dorothy Thorpe forfeited her right to any marital property should the parties subsequently divorce, but this agreement was never placed in the record and there was conflicting testimony as to its terms.

On March 4, 1978, Dorothy Thorpe went to California. On March 13, 1978, George Thorpe began this divorce action.

The trial of the matter, at which both parties appeared, was held on January 23, and February 7, 1979. Prior to the trial George Thorpe filed a disclosure of assets as required by sec. 247.27(1), Stats. 1977.[1] That statement

---

[1] "247.27 **Disclosure of assets required.** (1) In any action affecting marriage, except an action to affirm marriage under s. 247.02(1)(a), the court shall require each party to furnish, on such standard forms as the court may require, full disclosure of all assets owned in full or in part by either party separately or by the parties jointly. Such disclosure may be made by each party individually or by the parties jointly. Assets required to be disclosed shall include, but shall not be limited to, real estate, sav-

set forth assets totalling $46,176.80, consisting of a home (the duplex) which Mr. Thorpe valued at $32,000, a vacant lot valued at $1,500, a 1976 Ford LTD valued at $3,200, a 1978 Ford valued at $4,000, a bank account and a credit union account, each valued at $2,000, and personal property. There were no liabilities listed. George Thorpe listed an income of $624.48 per month, composed of $326 in social security, a $178.48 pension and net rental income of $120 per month from half of the duplex. His statement listed Dorothy Thorpe's income as consisting of $138 per month from social security.

Dorothy Thorpe did not file the required disclosure form. At the hearing, testimony was taken relating to the property of the marital estate and the parties' incomes. The trial court, in its amended findings, found that the $2,000 bank account, which was in Dorothy Thorpe's name, consisted of a gift from her aunt and therefore was not part of the marital estate. The trial court also found that Dorothy Thorpe owned two rings. One ring, valued at $1,600 was an inheritance from her

ings accounts, stocks and bonds, mortgages and notes, life insurance, interest in a partnership or corporation, tangible personal property, income from employment, future interests whether vested or nonvested, and any other financial interest or source. The court shall also require each party to furnish, on the same standard form, information pertaining to all debts and liabilities of the parties. The form used shall contain a statement in conspicuous print that complete disclosure of assets and debts is required by law and deliberate failure to provide complete disclosure constitutes perjury. The court may on its own initiative and shall at the request of either party require the parties to furnish copies of all state and federal income tax returns filed by them for the past 2 years, and may require copies of such returns for prior years. . . .

"(4) Failure by either party timely to file a complete disclosure statement as required by this section shall authorize the court to accept the statement of the other party as accurate."

Chapter 247 has been subsequently renumbered, and the current statute governing divorce actions is ch. 767, Stats. 1979–80.

father and therefore not part of the marital estate. The second, valued at $350 was apparently held to be part of the marital estate.

A real estate appraiser testified on Dorothy Thorpe's behalf that, in his opinion, the duplex had a fair market value of $42,500 and the vacant lot had a value of $3,500.

Concerning her income producing capacity, Dorothy Thorpe testified that she was unable to work because of back trouble. She testified that while she was in California she had been employed as a housekeeper and earned $500 per month plus room and board but had to quit because of health problems, including her back. George Thorpe testified that he was disabled and unable to work. The parties also testified as to their expenses. He testified his came to $426.50 per month. She testified hers totaled $455 per month.

There was also testimony by a savings and loan officer that on March 6, 1978, George Thorpe transferred money from a bank account and a certificate of deposit, both of which were joint accounts listing George W. Thorpe and Dorothy E. Thorpe as owners, into new accounts which were solely in George Thorpe's name. George Thorpe then closed out the certificate of deposit on March 9, 1978, and the Golden Passbook Account on July 17, 1978, realizing a total of $11,307.86 from the accounts. Similarly, an officer of Fairbanks Morse Credit Union testified that in March, 1978, George Thorpe closed out two accounts, each valued at $2,000. One was in the name of Dorothy Thorpe or George Thorpe, the other in the names of George or Dorothy or Robert Thorpe. (Robert Thorpe is George's son by an earlier marriage). George Thorpe opened an account in his and Robert Thorpe's names with a deposit of $2,000.

On February 8, 1979, the trial court issued a memorandum decision dividing the property of the parties. He awarded Dorothy Thorpe permanent possession of the

"1978 Ford automobile now in her possession," and a cash settlement of $3,600, payable in $150 monthly installments. This payment was in addition to sums which George Thorpe was obliged to pay Dorothy Thorpe because of his earlier failure to comply with a temporary maintenance order awarding Dorothy Thorpe $50 per week while the divorce was pending.

The trial court subsequently issued findings of fact and conclusions of law and granted a judgment of divorce. Both parties appealed to the court of appeals. The court of appeals, in an unpublished decision dated April 8, 1980, affirmed the decision of the trial court to give no effect to the alleged 1964 agreement by which Dorothy Thorpe renounced any claim to any marital property in the event of divorce. It also affirmed the trial court decision upholding the temporary maintenance award of $50 per week to Dorothy Thorpe and finding George Thorpe in contempt for not complying with that award. The court of appeals reversed that part of the judgment containing the property division and no maintenance award to her on the ground that the trial court did not adequately explain how it exercised its discretion, stating:

"The grant of maintenance is based on two factors, the need of the recipient spouse and the ability to pay of the potential paying spouse. *Bussewitz v. Bussewitz*, 75 Wis. 2d 78, 248 N.W.2d 417 (1977). It seems obvious to us that Dorothy has need, so the trial court must have decided that George could not afford to pay. This conclusion seems unwarranted, however, on the record before us. Furthermore, the trial court fails to explain why even though it refused to give Dorothy maintenance, it still awarded the vast majority of the marital estate to George. This divorce has truly left Dorothy impoverished, and our review of the record indicates that this result is neither required nor appropriate." (Slip Op., page 4).

On remand, the trial court issued more detailed factual findings and a supplementary memorandum, and reaffirmed its prior property division and denial of maintenance to Dorothy Thorpe. Dorothy Thorpe appealed this amended judgment to the court of appeals which affirmed the trial court in a per curiam decision. She then petitioned this court for review. We granted that petition.

In the recent case of *In Matter Of Marriage Of Jasper v. Jasper,* 107 Wis. 2d 59, 63–64, 318 N.W.2d 792 (1982), this court set forth the standard of review of a trial court's maintenance award and property division in a divorce judgment.

"We note at the onset that a trial court's award of family support and division of property will be overturned only if an abuse of discretion has occurred. *Vander Perren v. Vander Perren,* 105 Wis. 2d 219, 226–27, 313 N.W.2d 813 (1982); *Perrenoud v. Perrenoud,* 82 Wis. 2d 36, 45–46, 260 N.W.2d 658 (1978); *Bussewitz v. Bussewitz,* 75 Wis. 2d 78, 89–90, 248 N.W.2d 417 (1977). 'An abuse of discretion occurs when the trial court has failed to consider proper factors, has made a mistake or error with respect to the facts upon which the division was made, or when the division itself was, under the circumstances, either excessive or inadequate.' *Perrenoud, supra* at 46. Furthermore, as we have recently stated: 'A discretionary determination, to be sustained, must demonstrably be made and based upon the facts appearing in the record and in reliance on the appropriate and applicable law. . . . [M]ost importantly, a discretionary determination must be the product of a rational mental process by which the facts of the record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination.' *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). We would emphasize that a trial court in a proper exercise of discretion may reasonably reach a conclusion which we would not reach, and it will be upheld

if a reasonable court could arrive at that conclusion using the rational mental process we have observed above. *Id.*"

After a review of the record, in light of the applicable law, we hold it does not support the trial court's decision. We find there was an abuse of discretion as to property division and maintenance and so reverse the court of appeals and remand the case to the trial court for further proceedings.

The property division in this divorce proceeding is governed by sec. 247.255, Stats. 1977.[2] The maintenance

---

[2] "247.255 **Property division.** Upon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 247.02 (1) (h), the court shall divide the property of the parties and divest and transfer the title of any such property accordingly. A certified copy of the portion of the judgment which affects title to real estate shall be recorded in the office of the register of deeds of the county in which the lands so affected are situated. The court may protect and promote the best interests of the children by setting aside a portion of the property of the parties in a separate fund or trust for the support, maintenance, education, and general welfare of any minor children of the parties. Any property inherited by either party prior to or during the course of the marriage shall remain the property of such party and may not be subjected to a property division under this section except upon a finding that refusal to divide such property will create a hardship on the other party or on the children of the marriage, and in that event the court may divest the party of such property in a fair and equitable manner. The court shall presume that all other property except inherited property is to be divided equally between the parties, but may alter this distribution without regard to marital misconduct after considering:

"(1) The length of the marriage.

"(2) The property brought to the marriage by each party.

"(3) The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.

"(4) The age and physical and emotional health of the parties.

"(5) The contribution by one party to the education, training or increased earning power of the other.

award is governed by sec. 247.26, Stats. 1977.[3] These statutes list the factors which, under the law of this state, are to be taken into account in arriving at a property division and maintenance award.

In its initial decision, the trial court did not explain how it arrived at the division of the property and deci-

"(6) The earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage.

"(7) The desirability of awarding the family home or the right to live therein for a reasonable period to the party having custody of any children.

"(8) The amount and duration of an order under s. 247.26 granting maintenance payments to either party, any order for periodic family support payments under s. 247.261 and whether the property division is in lieu of such payments.

"(9) Other economic circumstances of each party, including pension benefits, vested or unvested, and future interests.

"(10) The tax consequences to each party.

"(11) Any written agreement made by the parties before or during the marriage concerning any arrangement for property distribution, such agreements shall be binding upon the court except that no such agreement shall be binding where the terms of the agreement are inequitable as to either party. The court shall presume any such agreement to be equitable as to both parties.

"(12) Such other factors as the court may in each individual case determine to be relevant."

[3] "247.26 Maintenance payments. (1) Upon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 247.02(1) (g) or (j), the court may grant an order requiring maintenance payments to either party for a limited or indefinite length of time after considering:

"(a) The length of the marriage.

"(b) The age and physical and emotional health of the parties.

"(c) The distribution of property made under s. 247.255.

sion not to award maintenance. The failure of a trial court to explain its reasons for reaching a particular result is reversible error or an abuse of discretion unless an appellate court can come to a reasonable conclusion from the record that the award was appropriate. *See Van Wyk v. Van Wyk*, 86 Wis. 2d 100, 110–11, 271 N.W. 2d 860 (1978) ; *Vier v. Vier*, 62 Wis. 2d 636, 639–42, 215 N.W.2d 432 (1974). The court of appeals, in the first appeal, could not come to such a conclusion and remanded the matter to the trial court for further findings.

On remand, the trial court reaffirmed its original decision, but made some additional findings to try and support that decision. Accepting those findings, a different panel of the court of appeals affirmed the trial court in the second appeal. Analyzing the amended findings of the trial court in light of the factors contained in secs. 247.255 and 247.26, Stats., we conclude that they do not support the decision dividing the property and denying maintenance.

"(d) The education level of each party at the time of marriage and at the time the action is commenced.

"(e) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

"(f) The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and if so, the length of time necessary to achieve the goal.

"(g) The tax consequences to each party.

"(h) Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has made financial or service contributions to the other with the expectation of reciprocation or has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

"(i) Such other factors as the court may in each individual case determine to be relevant."

The trial court found that the parties possessed assets with a total value of $47,950. Concerning the real estate and personal property, the trial court accepted the valuations contained in George Thorpe's financial statement rather than those testified by the real estate appraiser at trial.

The trial court did this in the face of a specific directive of the court of appeals in the first appeal that said:

". . . [t]he trial court refers to the valuations contained in the respective financial disclosure statements and yet only George submitted a statement. Dorothy elicited testimony as to valuation that conflicted with George's statement. We would like to know why the court rejected one and accepted the other." (Slip Op., page 3).[4]

The trial court on remand took George Thorpe's financial statement estimate of $32,000 on the duplex and $1,500 on the vacant lot, justifying it on the basis of sec. 247.27(4), Stats. 1977, which authorizes the court to accept one party's financial statement when the other party fails to file such a statement. However, in this case, Dorothy Thorpe presented, without objection, the testimony of a qualified expert. The court of appeals was correct in requiring an explanation of why the trial court accepted one and rejected the other. This, the trial court failed to do. On remand, the trial court[5] is authorized to consider the record in the first trial plus any other and additional testimony either party wishes to present.

---

[4] At the trial, Elbert W. Coutts, a real estate broker and appraiser in the area since 1955, testified on behalf of Dorothy Thorpe. He appraised the duplex at $42,500. and the vacant lot at $3,500. The appraiser pointed out that in June of 1978 a comparable piece of property nearby had sold for $41,000. and that real estate had appreciated since then.

[5] In his opinion, on remand, the trial judge in the original hearing stated, "In the event further proceedings evolve in this case, this Judge disqualifies himself from any participation therein and requests the assignment of a new Judge." His request should be honored.

The trial court did not include the proceeds from the Mutual Savings and Loan certificate of deposit and Golden Passbook Account, both of which were joint accounts in the name of both parties until George Thorpe transferred them into new accounts which he subsequently closed out. The trial court included the Fairbanks Morse Credit Union $2,000 account in the estate, but did not mention the $2,000 which was withdrawn and not redeposited.

Section 247.275, Stats. 1977,[6] states that property which is disposed of or otherwise unaccounted for by one of the parties within one year prior to the filing of the divorce petition is presumed to be part of the marital estate if it would have been so at the time of the filing of the petition. This statute would seem to apply to the above transactions by George Thorpe. Also, the Golden Passbook Account was closed out after the petition was filed, yet did not appear on his statement of assets.

George Thorpe testified that the proceeds from the certificate of deposit were divided among his children, and that Dorothy Thorpe acquiesced in that disposition, which was in conjunction with transferring title to the 1976 LTD to Dorothy Thorpe. However, the LTD was

---

[6] "247.275 **Disposition of assets prior to action.** In any action affecting marriage, except an action to affirm marriage under s. 247.02(1)(a), any asset with a fair market value of $500 or more which would be considered part of the estate of either or both of the parties if owned by either or both of them at the time of the action, but which was transferred for inadequate consideration, wasted, given away or otherwise unaccounted for by one of the parties within one year prior to the filing of the petition or the length of the marriage, whichever is shorter, shall be rebuttably presumed to be part of the estate for the purposes of s. 247.255 and shall be subject to the disclosure requirement of s. 247.27. Transfers which resulted in an exchange of assets of substantially equivalent value need not be specifically disclosed where such assets are otherwise identified in the statement of net worth."

included in the marital estate[7] and, while the facts of the disposition of the proceeds of the certificate of deposit may be such as to rebut the presumption contained in sec. 247.275, Stats., the trial court made no such finding nor can we conclude from the record that those funds should be excluded from the marital estate. Similarly, there was no testimony as to the disposition of the Golden Passbook Account and the $2,000 withdrawn from Fairbanks Morse Credit Union.

Even if we were to accept the trial court's findings as to the total value of the marital estate, we conclude that those findings do not support the property division.

The trial court in its amended findings on remand stated:

"The Court having further considered the matter and having determined that the original judgment is justified by the facts and circumstances of this case. . . ."

This is directly contrary to the holding of the court of appeals which said, concerning the property division and no award of maintenance to Dorothy Thorpe, ". . . [O]ur review of the record indicates that this result is neither required nor appropriate." (Slip opinion, page 4).

However, the trial court reaffirmed its original judgment, even though the record was the same.

The findings, conclusions and supplementary memorandum which the trial court made, after the initial remand by the court of appeals, do not support the property division and denial of maintenance. The trial court stated that it viewed the marriage as dating from 1965

---

[7] The record is somewhat confusing, as testimony by George Thorpe and Dorothy Thorpe, and the disclosure of assets filed by George Thorpe, described the car in Dorothy Thorpe's possession as a 1976 Ford LTD, while the trial court decision awarded Dorothy Thorpe "the 1978 Ford automobile now in her possession." We assume that the decision contains a typographical error and intended to award Dorothy Thorpe the 1976 Ford that she possessed.

rather than 1959. This appears to be legally incorrect, as sec. 247.37, Stats. 1963, which applied at the time of the divorce and reconciliation, stated that a divorce judgment was not effective until one year after the date it was granted. It appears that the parties reconciled before this one year period expired and had the divorce judgment vacated. The fact that Dorothy Thorpe received $4,500 as a property settlement in that proceeding, which she spent prior to the reconciliation, has very little, if any, relevance to a divorce that occurs thirteen years later.

The trial court in its findings stated:

"The home of the parties located at 832 Briar Lane, the vacant lot in the city of Beloit, and the household furniture and furnishings in the possession of the petitioner are all assets which were awarded to the petitioner in the judgment of divorce between the parties in November of 1964 and should not be considered part of the marital estate of the parties for purposes of this divorce action."

We disagree with the trial court that all of the assets which George Thorpe possessed when the parties reconciled in 1965 should be excluded in the property division. Even under the trial court's theory that this was a thirteen-year marriage, total exclusion of assets the husband then owned is not justifiable and constituted an abuse of discretion. While source of assets is an item to be considered under the statute, total exclusion of such assets is not justified. Section 247.255(2), Stats.; *Wilberscheid v. Wilberscheid,* 77 Wis. 2d 40, 46, 252 N.W.2d 76 (1977).

The trial court stated that Dorothy Thorpe's departure for California "was the immediate cause for" the divorce. This is irrelevant to the property division or maintenance award. Questions of misconduct or fault are irrelevant in deciding the financial settlement in a divorce. Section 247.255, Stats; *Dixon v. Dixon,* 107 Wis. 2d 492, 319 N.W.2d 846 (1982).

The trial court stated that although the agreement whereby Dorothy Thorpe waived any right to marital property upon a subsequent divorce had not been produced, and therefore would not be given effect, she had testified as to the existence of such an agreement. Her testimony as to such an agreement is not relevant to the financial settlement. While sec. 247.255 (11), Stats., requires the court to consider a written agreement, no such agreement was produced at the hearing. The statute states that the agreement will not be binding if it is inequitable. The agreement was said by the court of appeals in the first appeal to be "undoubtedly inequitable and should not be enforced." (Slip Op., page 4). We agree.

The trial court concluded that George Thorpe was unable to work. This is supported by the record. The trial court's conclusion that Dorothy Thorpe was capable of earning a living and "intentionally unemployed" is not. The only testimony as to Dorothy Thorpe's employability was by her, in which she stated that she was unable to work because of a "bad back" and that she had consulted a doctor who advised her against working. Given that Dorothy Thorpe was sixty-five years old at the time of the hearing in February, 1978, and her unrebutted, if perhaps not wholly convincing, testimony as to her poor health, we consider the trial court's finding as to her earning capacity unsupported by the record.

The trial court stated that George Thorpe's living expenses exceeded his income, while Dorothy Thorpe's income capabilities exceeded her expenses. This is contradicted by the record. The trial court found that George Thorpe had a monthly income of $624.48, composed of social security, a pension, and net rent from the rental unit in the duplex.

The trial court made no findings as to George Thorpe's monthly expenses. He testified that his monthly ex-

penses added up to $426.50. This was less than his income.

The trial court found that Dorothy Thorpe had an income of $138.60 per month from social security and has the ability to be employed at a salary of $500 per month plus room and board. As stated above, the record does not support a finding that she could find employment at this salary. No finding was made as to Dorothy Thorpe's expenses. Dorothy Thorpe testified at the hearing that her expenses were $455 per month and no other evidence was introduced as to those expenses.

From the foregoing review of the record, it appears that George Thorpe's income exceeds his expenses, while Dorothy Thorpe has a deficit. The state of the record does not permit us to calculate the amount of such surplus or deficit, or to determine Dorothy Thorpe's earning capacity. The record does not support the trial court's finding that George Thorpe has a deficit and Dorothy Thorpe should have a surplus.

The trial court expressed doubts about Dorothy Thorpe's credibility, stating: "The testimony of the respondent on many points was evasive, if not untruthful, and the court could not distinguish. The court did not believe she was destitute or impoverished. . . ." While the trial judge is usually best able to gauge a witness's credibility, no evidence was introduced to refute her testimony that she had little property and minimal income producing capacity. The judge's suspicion of her veracity is no basis for such an unbalanced financial settlement as occurred here.

We recognize that both parties would be better served by bringing this litigation to an end. George Thorpe is now seventy-three years old and Dorothy Thorpe is sixty-eight. Neither is wealthy and continuation of this matter will only further deplete their limited resources. However, we reverse the property division and maintenance portions of the judgment of divorce as they can-

not be reconciled with the facts appearing in the record and the statutes governing financial settlements upon divorce.

We therefore reverse the court of appeals and remand the case to the trial court for further hearings and findings. Dorothy Thorpe should submit the disclosure of assets form required by sec. 247.27, Stats. The court should make a determination as to what assets should be included in the marital estate by virtue of sec. 247.275. The trial court should conduct further hearings to permit the parties to make an adequate record and base its decision on explicit findings as to the assets, liabilities, income and expenses of both parties in light of the criteria set forth in secs. 247.255 and 247.26.

*By the Court.*—The decision of the court of appeals is reversed and cause remanded to the trial court for further proceedings not inconsistent with this opinion.