IN RE the MARRIAGE OF: Judith M. PARRETT, Petitioner-Appellant-Cross-Respondent,

v.

James R. PARRETT, Respondent-Cross-Appellant.†

Court of Appeals

*No. 87–1279. Submitted on briefs May 26, 1988.—Decided October 26, 1988.*

(Also reported in 432 N.W.2d 664.)

† Petition to review pending. This petition was not disposed of at the time the volume went to press. Its disposition will be reported in a later volume.

For the petitioner-appellant-cross-respondent the cause was submitted on the briefs of *Thomas M. Rusch* and *Rusch & Rusch Law Office, S.C.,* of Medford.

For the respondent-cross-appellant the cause was submitted on the briefs of *William A. Grunewald* and *Corliss V. Jensen* and *Nikolay, Jensen, Scott, Gamoke & Grunewald, S.C.,* of Medford.

Before Gartzke, P.J., Dykman and Eich, JJ.

GARTZKE, P.J.   Judith Parrett appeals from a judgment divorcing her from James Parrett. Judith contends that the trial court abused its discretion (1) by awarding her limited term maintenance leaving her with $54,000 annual income and James with over $400,000 annual income; (2) by awarding child support of $1,000 per month; (3) by awarding an unequal property division; (4) by failing either to award interest on or to determine the present value of the property award payable in the future; and (5) by failing to provide security for the support, maintenance and property payments. James has cross-appealed. He contends that the court should have awarded no maintenance whatever. We reject the contentions of both parties except as to the limited term for maintenance and as to security for the property

833

payments, and we reverse and remand only in those respects.

### 1. *Background*

The facts are unusual. The parties married on March 16, 1979, when Judith was 27 and James was 38 years old. Judith owned a car and a mobile home, and James's major asset was a car which was encumbered. Both parties had full-time jobs at Weather Shield Manufacturing in Medford, Wisconsin, where James ran a machine in the tool division and she was a millworker.

In the fall or winter of 1982, Weather Shield wanted to manufacture curved windows. James independently developed a unique method to produce wooden parts for such windows. He started his own business and became Weather Shield's only supplier of those parts. Weather Shield is his only customer. He operated the business as a sole proprietor through December 31, 1985 when he incorporated as Parrett Mfg. Co., Inc., and is its sole shareholder. The sales of his business rose from about $100,000 in 1983 to about $1,000,000 in 1986.

Judith has continued to work as a millhand at Weather Shield. From 1983 through July 1985 she also did clerical work for James's business.

Judith began this divorce action in April 1986. The case was tried on January 8, 1987. The trial court found that the value of the business was $554,634. After deducting his debts, the net value of James's other property was $123,623, the value of Judith's property was $30,406, and the total marital estate was therefore $708,663.

The court began with the presumption that an equal property division is appropriate. It reasoned, however, that the property should be divided 60% to

James and 40% to Judith because the marriage had lasted only about seven years, neither had brought much property to the marriage, and while Judith had been a contributing and dedicated housewife, she had very little part in developing the principal asset, Parrett Manufacturing. She did not contribute to the education, training or increased earning power of James. She is young, in good health and continues to work as a millworker at Weather Shield. Since maintenance as well as generous child support was awarded, in the court's view the division should favor James, "the genius and driving force behind the commencement of the business and its development and prosperity."

To effect that division, under which James would receive $425,198 and Judith would receive $283,465, the trial court assigned to James his other property having a net value of $77,436, and his corporate stock in Parrett Manufacturing valued at $554,634. The court assigned to Judith her other property valued at $30,406, leaving a balance due her which the court fixed at $253,000. The court ordered that the $253,000 cash award be paid in 51 monthly installments of $5,000, with no interest.

The trial court found that the parties' monthly incomes and expenses were as set forth in their financial disclosure statements. Those statements show the following:

|                         | James     | Judith    |
| ----------------------- | --------- | --------- |
| Salary/Wages            | $10,750   | $ 1,510   |
| Rents                   | 5,800     | None      |
| Total                   | $16,550   | $ 1,510   |
| Monthly Deductions:     |           |           |
| Fed. and State Taxes    | $ 6,987   | $    430  |
| Insurance               |           | 15        |
| Net Take Home           | $ 9,563   | $ 1,065   |
| Expenses:               | 5,429     | 1,052     |
| Net                     | $ 4,134   | $     13  |

The trial court rejected James's contention that no maintenance should be allowed. The court concluded that family maintenance did not involve a question of need, since Judith continued to work at her previous employment and has adequate funds for her present needs. The improved status of the parties had not substantially changed their lifestyle, except that Judith had recently hired household help. The court distinguished these facts, in which the parties had not established an elevated lifestyle "for any period of time," from situations such as that in *Bahr v. Bahr,* 107 Wis. 2d 72, 318 N.W.2d 391 (1982). In *Bahr,* the parties began with little, but during the twenty-four year marriage the husband developed a successful medical practice, and by the time of divorce the parties had a long-established lifestyle at an elevated income. The court concluded, however, that "equitable treatment calls for some sharing of [James's] good fortune and highly elevated income" and fixed maintenance at $3,000 per month for seven years.

The parties have one child. The court concluded that to apply the child support guidelines to James's gross income would result in a figure so far beyond the child's needs as to be irrational. It held that $1,000 per month is the largest justifiable award to meet the needs of the child.

2. *Maintenance*

■

We review a maintenance award for abuse of discretion. *In re Marriage of Harris v. Harris,* 141 Wis. 2d 569, 573, 415 N.W.2d 586, 588 (Ct. App. 1987). A circuit court when fixing maintenance and an appellate court when reviewing a maintenance award must begin with sec. 767.26, Stats. *In re Marriage of LaRocque,* 139 Wis. 2d 23, 31, 406 N.W.2d 736, 739 (1988). That statute enumerates nine statutory factors the trial court is to consider, and, as provided in subsec. (10), adds "[s]uch other factors as the court may in each individual case determine to be relevant." According to *LaRocque,* the statutory factors

> reflect and are designed to further two distinct but related objectives in the award of maintenance: to support the recipient spouse in accordance with the needs and earning capacities of the parties (the support objective) and to ensure a fair and equitable financial arrangement between the parties in each individual case (the fairness objective).

*Id.* at 33, 406 N.W.2d at 740.

The trial court considered the statutory factors and took into account, without identifying it as such, the "fairness objective" identified by the *LaRocque* court.[1] The court did so by reference to "equitable

---

[1]The trial court's decision is dated April 3, 1987. *LaRocque* was decided June 10, 1987.

treatment [which] calls for some sharing of [James's] good fortune and highly elevated income."

Because the trial court relied almost exclusively on the "good fortune and highly elevated income" factors, which are not enumerated in sec. 767.26(1) through (9), Stats., it must have employed sec. 767.26(10). This is permissible. Nothing in the statute or the case law obligates the trial court to rely exclusively upon the factors enumerated in subsecs. (1) through (9). The obligation is only to consider relevant statutory factors, and the court need not address every factor. *In re Marriage of Trattles v. Trattles*, 126 Wis. 2d 219, 228, 376 N.W.2d 379, 384 (Ct. App. 1985); *In re Marriage of Lewis v. Lewis*, 113 Wis. 2d 172, 181, 336 N.W.2d 171, 175–76 (Ct. App. 1983).

"Good fortune and highly elevated income" are factors which the trial court could reasonably conclude affect the "fairness objective" identified by the *LaRocque* court. Those factors are therefore properly considered relevant to the maintenance issues for purposes of sec. 767.26(10), Stats.

James argues that reliance on the fairness objective is inappropriate to a short marriage and that the facts differ vastly from those in *LaRocque,* where the parties had been married for twenty-five years and their financial circumstances were relatively modest. The argument misses the point. When describing sec. 767.26, Stats., factors as designed to further the support and the fairness objectives, the *LaRocque* court spoke to marriages generally. Since the statute applies to all marriages, so must the objectives it is designed to further. Reliance on the fairness objective through use of sec. 767.26(10) was not error.

James claims an additional abuse of discretion in that the trial court awarded maintenance for seven years. Judith raises the same issue, and we discuss it later.

We conclude that the trial court properly exercised its discretion when it ruled that Judith is entitled to maintenance. We therefore reach Judith's claim that too little maintenance was awarded.

Judith's claim that more maintenance should have been awarded emphasizes *LaRocque.* She asserts that the award fails to meet the "fairness objective." We disagree. The *LaRocque* facts are hardly comparable to those before us. Here the marriage is much shorter, the accumulations of the parties are much greater, and Judith shares in a substantial marital estate, the value of which is largely attributable to her husband's efforts. Under the circumstances, the maintenance award meets the fairness objective.

Judith asserts in her brief that although the lifestyle of the parties was not lavish, it was elevated above the normal and "had just begun to take off." She contends that the trial court should have considered the lifestyle the parties could have enjoyed had the marriage continued, again relying on *LaRocque.* In that case after a long marriage the parties had reached the stage when they "could enjoy a standard of living for which they both had strived," and their accumulations had been modest. *LaRocque,* 139 Wis. 2d at 36, 406 N.W.2d at 741. *LaRocque* holds that "[o]ver a *long* marriage the parties each contribute to the stream of income as marital partners and should share the rewards." *Id.* at 39, 406 N.W.2d at 742 (emphasis added). Here the marriage was short, the spate of income is due primarily to the efforts of the husband, and in addition to substantial maintenance,

the wife will receive forty percent of an estate exceeding $700,000.

We agree, however, that the trial court should have stated its reasons for limiting the maintenance award to seven years. Limited term maintenance is permitted under sec. 767.26, Stats., but if a court limits the term, it must explain why. *Lewis,* 113 Wis. 2d at 180, 336 N.W.2d at 176. Our search of the record has produced no explanation for the court's choice of seven years. We will reverse the maintenance award insofar as it is limited to seven years, and remand for reconsideration. On remand the court may provide for a shorter or greater term, but only if it explains its choice, or for an unlimited term.

Before turning to the support issues, we observe that Judith's arguments are partly based on the claim that James has an annual income of $436,000. That was an accountant's prediction in 1986 as to the 1987 annual earnings of the business. Assuming the corporation earns $436,000, this is not necessarily income entirely available to James. The trial court found that the incomes of the parties were as set forth in their respective financial disclosure statements, and James's statement (which speaks to the present and not the future) shows monthly income of $16,550, or $198,600 annually. The court did not clearly err by accepting James's statement of his monthly income. Findings of fact by a trial court will not be set aside unless clearly erroneous. Sec. 805.17(2), Stats. For that reason, we reject Judith's claim that James's income is more than twice the amount he disclosed.

### 3. *Support*

Judith contends that the trial court should have applied the percentage guidelines set forth in Wis. Adm. Code ch. HSS 80, Child Support Percentage of Income Standard and that the court erred because the support award is based only on need.

This case was tried on January 8, 1987. Section 767.25(1m), Stats. 1983, as then in effect, provided in relevant part that when ordering payment of child support "the court shall consider the guidelines for the determination of child support established by the department of health and social services" and statutorily specified factors.[2] The trial court met its obligation. It considered the guidelines and concluded that their use would result in a figure so far beyond the child's needs as to be irrational.

We cannot fault that reasoning. Applying the guidelines to James's gross income disclosed in his standard financial disclosure form, monthly child support payable by him would be 17% of $16,550, or $2,813. No basis exists in this record for a finding that their child has a need even approaching that amount.

We reject Judith's argument that it is improper to deviate from the guidelines to avoid a high support payment merely because it exceeds the child's needs. She relies upon a memorandum by the secretary of the department of health and social services to the effect that no solid evidence exists that the percentage

---

[2]Since July 1, 1987, courts must determine child support payments by applying the percentage standard established by the department of health and social services, but may modify the amount of support payment after considering certain factors. Sec. 767.25(1j) and (1m), Stats. The change was made by 1985 Wis. Act. 29.

rate may drop for parents with very high annual incomes. *Department of Health & Social Services Memorandum to Members of Wisconsin Judiciary,* December 20, 1983, Attachment I, p. 3. Whatever the evidence as to families generally, in this case the trial court found that the parties' lifestyle had not substantially changed. It is reasonable to refuse to apply guidelines based on statistical generalities when the facts before the court bear little relationship to a statistical norm.

We also reject Judith's assertion that the trial court made no provision for orthodontic expenses and did not discuss the fact that Judith provides health insurance for the child. The judgment provides that Judith is to continue medical and hospitalization insurance for the child available through her employment and that uninsured medical or dental expenses should be borne equally by the parties.

The assertion that the trial court made no findings regarding the needs of the child has merit. Support based on need should require findings as to the child's needs and the ability of the parents to pay. *Edwards v. Edwards,* 97 Wis. 2d 111, 116, 293 N.W.2d 160, 163 (1980). But the error is harmless. Judith offered no separate evidence regarding the needs of the child. Her financial disclosure statement shows monthly expenses of $1,052, including, so far as we can determine, the child's expenses. If the combined monthly expenses of Judith and the child barely exceed $1,000, then that amount is more than enough to cover the needs of the child since Judith is awarded $3,000 for monthly maintenance.

### 4. *Property Division*

Judith contends that the trial court should be directed to enter an equal property division. We review a property division for abuse of discretion. *Marriage of Wallen v. Wallen,* 139 Wis. 2d 217, 229, 407 N.W.2d 293, 297 (Ct. App. 1987), and we find none.

Section 767.255, Stats., provides that the trial court is to presume that property other than that acquired by gift, bequest, devise or inheritance is to be divided equally between the parties. The same statute provides that the court may alter the distribution after considering enumerated factors. The trial court considered the factors.

The prime factor behind the trial court's assigning 60% to James was its characterization of him as "the genius and driving force behind the commencement of the business and its development and prosperity." Since the trial court noted that Judith has been a contributing and dedicated housewife during the marriage but added that she had very little part in developing or building the business, the court considered the contribution of each party. It is not an abuse of discretion for the trial court to give heavy weight to the fact that the major asset is attributable primarily to one party's efforts.

Judith again argues that the facts in many ways parallel those in *LaRocque.* She asserts that she has made her equal or greater contributions in kind through her labor, cooking, household cleaning and care of the child, and for that reason she is no less entitled to an equal share than was the wife in *LaRocque.* Nothing in *LaRocque,* however, requires an

equal property division where the principal asset resulted primarily from one party's efforts.

Section 767.255, Stats., contemplates that occasions will arise when property need not be divided equally between the parties. This is such an occasion. The trial court did not abuse its discretion in the property division.

5. *Property Payable in the Future*

Judith next contends that the trial court either should have directed that James pay interest on the 51 monthly installments of $5,000 or should have adjusted the payments to reflect the present value of the award.

> Whether to allow interest on the balance due on a property division payable in installments is within the discretion of the trial court. *Corliss v. Corliss,* 107 Wis. 2d 338, 347, 320 N.W.2d 219, 223 (Ct. App. 1982). If the trial court does not award interest in exercising that discretion, it must explain its reasons. Either by awarding interest, *id.,* or by considering the present value of property division payable in the future, *Jasper v. Jasper,* 107 Wis. 2d 59, 69, 318 N.W.2d 792, 797 (1982), the trial court must compensate the recipient spouse for the money the award would earn during the installment period if it had been paid in full at the time of judgment or explain its failure to do so.

*Overson v. Overson,* 125 Wis. 2d 13, 16–17, 370 N.W.2d 796, 798 (Ct. App. 1985).[3]

---

[3]Awarding the recipient interest accomplishes the same result as adjusting the payments to reflect consideration of the present value of the award. Each calculation uses the same rate of interest.

The trial court explained its decision. The court said, "Payment is to be made at the rate of $5,000 per month for 51 months without interest, since the source of these payments will not be an established asset from which interest would be derived, rather than from current earnings anticipated in the future but not now in existence."

This reasoning implicitly considers the fact that the major asset assigned to James is his stock in Parrett Manufacturing, the value of which he must recover through future corporate earnings.[4] In that sense, James does not enjoy the present value of that asset, and no reason exists to compensate Judith through interest or otherwise for not receiving the immediate enjoyment of $253,000 of her award. Because the trial court explained its decision, it did not abuse its discretion.

6. *Security for Future Payments*

Judith criticizes the trial court for its failure to grant her a security interest in James's assets to protect the maintenance, support and property division awards and to prohibit him from incurring liabilities without court approval. Judith asserts that the court's unexplained refusal to protect the awards is an abuse of discretion.

---

[4]The court fixed the value of the stock at two and one-half times net earnings after allowance for taxes and after deducting 20% for its unmarketability. The court found that because of many factors, predicting success for the business beyond two or three years would be speculative. The risk factors involved not only James's possible death or incapacity, but also a breakdown in the good relationship between the company's sole customer and James, a sudden drop in this cyclical industry, a general recession, and a decrease in the popularity of curved windows.

A trial court may impose a lien to secure a property division dependent in part upon a future act by the payor spouse. *See Trowbridge v. Trowbridge,* 16 Wis. 2d 176, 187–88, 114 N.W.2d 129, 136 (1962) (lien imposed on husband's assets to secure his transfer of trust assets). Section 767.30(2), Stats., authorizes the court to charge real estate of a party liable for support or maintenance payments or to require that party to give security for payment.

The decision to order such security is discretionary. Discretion must be exercised, in the sense that the decision must be based upon a rationale. *Loy v. Bunderson,* 107 Wis. 2d 400, 414–15, 320 N.W.2d 175, 184 (1982). Consequently, a decision without an express or apparent reason is an abuse of discretion.

In her post-trial brief to the court, Judith requested that the court protect her share of the property division payable in the future by granting her a security interest in all of James's assets, business and nonbusiness, and by restricting his ability to incur new liabilities, either individually or through the corporation, without court approval. The trial court's memorandum decision covered property division, maintenance and support but not Judith's requests for a security interest and the debt restriction. It directed Judith's counsel to prepare the findings, conclusions and judgment. When purporting to comply with that direction, counsel added a new provision for a security interest to secure the property division. The court signed the findings, conclusions and judgment after striking the new provision. When counsel complained, the court tersely replied that the provision "was deleted as none was ordered."

James agrees that the trial court may in its discretion award security for a property division payable in the future. *See Trowbridge,* 16 Wis. 2d at 187–88, 114 N.W.2d at 136. The trial court's failure to explain its reasons for not granting the requested security for the property payments is an abuse of discretion, unless we can reach our own conclusion on the basis of the record that the refusal was appropriate. *In re Marriage of Thorpe v. Thorpe,* 108 Wis. 2d 189, 198, 321 N.W.2d 237, 242 (1982). The only justification James offers for the court's refusal is that he is not in arrears on past payments ordered by the court. But that reason is not necessarily adequate. Under the circumstances, rather than speculate as to the court's reasons, we will direct a reexamination of this issue on remand as well.

Judith additionally asserts that the trial court abused its discretion when it refused to provide security for the support and maintenance awards. If Judith requested security as to the support and maintenance awards, that request is not of record, and we treat it as a request made for the first time on appeal. Such errors are seldom reviewed on appeal, *Zeller v. Northrup King Co.,* 125 Wis. 2d 31, 35, 370 N.W.2d 809, 812 (Ct. App. 1985), and we decline to pursue it here.

*By the Court.*—Judgment affirmed in part and reversed in part and cause remanded for further proceedings consistent with this opinion. No costs to either party.