IN RE the MARRIAGE OF Donald J. JACQUART, Petitioner-Respondent,

v.

Judy A. JACQUART, Respondent-Appellant.†

Court of Appeals

*No. 93–0983. Submitted on briefs February 18, 1994.—Decided March 30, 1994.*

(Also reported in 515 N.W.2d 539.)

†Petition to review denied.

375

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Lee F. Calvey* of *Lee F. Calvey & Associates, S.C.* of Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Jean M. Ansay* and *Michael S. Haggenjos* of *Runkel, Ansay & Eberhardt* of Port Washington.

Before Brown, Nettesheim and Snyder, JJ.

NETTESHEIM, J.   We review the family court's denial of Judy A. Jacquart's postjudgment motion for a modification of the support obligation of her former husband, Donald.[1] The family court ruled that, although Judy had established a substantial change in

---

[1] The judgment was entered by the Honorable Joseph D. McCormack. The postjudgment order which we review was entered by the Honorable Warren A. Grady.

circumstances, Donald was fully meeting all the economic needs of the children as contemplated and required by the judgment. Therefore, the court denied Judy's motion. We affirm the order.

## THE JUDGMENT AND THE POSTJUDGMENT RULING

The seeds for this appeal were sown in the unique language and structure of the parties' divorce judgment which approved and incorporated the parties' marital settlement contract. The judgment provided for joint custody of the parties' two minor children and designated Judy as the primary caretaker. The judgment did not require Donald, a practicing attorney, to pay a specific dollar amount or percentage of his earnings as support. Instead, the judgment provided:

> [Donald] has been and shall continue to contribute on a regular and ongoing basis for the support needs of the children of the parties, including payments for the children's recreational and extracurricular activities, vacations and education.
> The parties stipulate that the use of the percentage standard pursuant to Sec. 767.25(1)(j) is unfair to the children and the parties after taking into account the financial resources of the children, *the payments provided elsewhere in this agreement to the wife,* and the periods of placement and involvement the children have with their father. [Emphasis added.]

The judgment further provided that "[m]aintenance to [Judy] is specifically waived and shall be denied in that *other provisions as herein contained have been made for the benefit of the wife in lieu of said maintenance and other marital obligations of the husband to the wife."* (Emphasis added.)

Pursuant to the property division, the judgment awarded assets valued at $241,557 to Judy and $234,960 to Donald. In addition, Donald was obligated to pay Judy § 71 payments[2] in the total amount of $514,500 over a ten-year period as follows: (1) $5000 per month from January 1989 through December 1991, (2) $4250 per month thereafter from January 1992 through June 1996, and (3) $2500 per month thereafter from July 1996 through December 1999.[3]

The judgment also stated:

> The parties specifically declare that this agreement is intended to be a contract which was reached as a result of negotiations wherein each party, assisted and advised by legal counsel, compromised various demands in exchange for agreement of the other. . . . In the event any court attempts to modify this agreement in any respect over the objection of either party, either party may object *to any or all other portions of this agreement.* . . .

Postjudgment, Judy moved for revision of the judgment pursuant to § 767.32, STATS. In her motion, Judy asked that the family court issue an order requiring Donald "to pay child support for the minor children of the parties." Following an evidentiary hearing, the family court issued a written decision denying Judy's request. The court held, inter alia, that while Judy had established the requisite change in circumstances, "[t]here was no evidence . . . to indicate that the needs of the minor child are not being adequately met or that her standard of living, as a child of divorced parents, is

---

[2] 26 U.S.C. § 71.

[3] The judgment also provides for cessation or reduction of these payments under certain circumstances which are not germane to this appeal.

not at least as good post-divorce as it was pre-divorce."[4] Judy appeals.

## *APPELLATE JURISDICTION AS TO CERTAIN ISSUES*

We first address Donald's jurisdictional challenges to two of Judy's appellate issues. Judy claims that the family court erred, inter alia, by: (1) failing to require Donald to file a financial disclosure statement, and (2) refusing to reopen the evidence to permit Judy to present evidence concerning an attorney's fee which Donald had recently realized as the result of a personal injury settlement. Donald contends that we have no jurisdiction over these two issues because neither ruling was reduced to writing and because the order actually appealed does not state the essence of the court's rulings on these two matters. We reject Donald's jurisdictional arguments.

Regarding the financial disclosure issue, the facts are as follows. After the family court had conducted the evidentiary hearing on Judy's motion on September 1, 1992, Judy brought a motion seeking to compel Donald to file a financial statement pursuant to § 767.27, STATS. The court ruled that it would require Donald to file such a form if the court rejected Donald's argument that Judy was estopped from seeking a modification of the judgment. The court directed Judy to file a written order to this effect. She never did. Thereafter, the family court issued its written decision which rejected Donald's estoppel argument. However, the court then went on to deny Judy's modification motion without

---

[4] At the time Judy brought her motion, both children were minors. While the matter was pending, one of the children attained majority.

379

first following through on its prior ruling that Donald should file a written financial disclosure form.

Regarding Judy's motion to reopen the evidentiary proceedings, the facts are as follows. Following the close of the evidence in the modification proceeding, Judy brought a motion pursuant to § 806.07, STATS., seeking to reopen the motion proceedings. As grounds for this request, Judy alleged that Donald had recently settled a personal injury case which would produce an attorney's fee of approximately $1,250,000. The record does not reveal any formal action by the court on this motion. Instead, the court proceeded to issue its written decision denying Judy's modification without addressing Judy's request to reopen the proceedings.

Donald first claims that we are without jurisdiction to review these two issues because the family court's rulings were not reduced to writing. We disagree. When an appeal is taken as a matter of right from a final order or judgment, only such final document need be reduced to writing. Section 808.03(1), STATS. The law does not require that a trial court's nonfinal rulings be reduced to writing before they are eligible for review in a direct appeal from a subsequent final order. Moreover, Donald's argument would place an unreasonable burden on trial counsel and the trial court by requiring *every* trial court ruling made during the course of a proceeding to be reduced to writing before we could review it.

Donald next claims that we are without jurisdiction because the family court's rulings on these two matters are not embraced by the final order denying Judy's modification request. Again we disagree. An appeal from a final order brings before the appellate

court all prior nonfinal orders and rulings adverse to the appellant and favorable to the respondent made in the action or proceeding. RULE 809.10(4), STATS. Here, the court's rulings regarding the financial disclosure statement and the motion to reopen the proceedings were not final orders. Instead, each ruling was made during the proceedings on the larger issue of whether the court should modify the divorce judgment. Therefore, these interim rulings are properly before us via Judy's appeal from the court's final order denying her motion to modify the judgment.

We reject Donald's jurisdictional challenges to these two issues and we address them on the merits.

## THE MODIFICATION RULING

### 1. Standard of Review

A modification of child support rests within the sound discretion of the family court and will not be overturned on appeal absent a misuse of the court's discretion. *See Burger v. Burger*, 144 Wis. 2d 514, 523, 424 N.W.2d 691, 695 (1988). This discretion is properly exercised when the court has considered the needs of the custodial parent and children, and the ability of the noncustodial parent to pay. *Id.* at 523-24, 424 N.W.2d at 695.

### 2. Our Appellate Approach

In addition to the issues concerning Donald's failure to file a financial disclosure form and the motion to reopen the proceedings, Judy raises a host of additional challenges to the family court's ruling. Judy claims that the family court erred by: (1) failing to adequately consider the children's needs, (2) failing to consider

Donald's ability to pay, (3) finding that Donald was meeting the children's economic needs, (4) adhering to the support provision of the judgment without her consent, (5) failing to order a modification of the judgment in light of the change in circumstances, and (6) failing to apply the percentage guidelines.

Since Judy's appeal is from the family court's postjudgment order, she focuses on the particular errors which she contends occurred during the modification proceeding. By this approach Judy is able to avoid any meaningful analysis of the structure, purpose and reach of the parties' unique marital settlement contract and the judgment based thereon. Instead, Judy's core argument is that because she established a change in circumstances, the family court was duty bound to modify the judgment.

We reject Judy's appellate approach. An appellate court is not required to address an appellate argument in the manner which a party has structured the issues. *See State v. Waste Management*, 81 Wis. 2d 555, 564, 261 N.W.2d 147, 151, *cert. denied,* 439 U.S. 865 (1978). We conclude that we should first determine the circumstances which the judgment contemplated *before* we can say whether a change in those circumstances has occurred. Thus, we first analyze the judgment and then measure it against the modification proceeding.

### 3. The Judgment

The parties' marital settlement contract recognized Donald's past history of meeting the support needs of the children, including payments for their educational, recreational and extracurricular activities. In fact, no temporary order directing Donald to pay support was ever entered against Donald in this case. In

light of this history, Judy, as the primary custodial parent, agreed to a recital of Donald's support obligation in admittedly casual language. And, the family court which heard the original action approved such language.

While we do not favor this kind of language in most cases, this was not the usual case. Historically, Donald had made substantial financial contributions for the support of the parties' children without the necessity of a formal support order. Thus, the language agreed to by Judy and approved by the family court was understandably general.

Moreover, Judy's agreement to this language carried significant corresponding benefit to her. She received a marital estate award valued at $241,557 and anticipated § 71 payments of an additional $514,500 over the ensuing ten years. In addition, the parties' contract, as approved by the family court, expressly rejected the alternative of reciting Donald's support obligation in more fixed terms under the percentage guidelines. Instead, the parties agreed that the use of the guidelines would be unfair to the children and the parties, especially in light of *"the payments provided elsewhere in this agreement to the wife, and the periods of placement and involvement the children have with their father."* Thus, the parties' contract recognized the property division and § 71 payments on the one hand and the support provision on the other as a quid pro quo arrangement.

### 4. The Postjudgment Proceeding

Against this backdrop, we turn to the postjudgment proceeding on Judy's modification motion. We begin by identifying the focus of the proceeding and how the legal and factual issues evolved.

Judy's motion sought a modification of the judgment, specifically asking the family court for an order "requiring [Donald] to pay child support for the minor children of the parties." Standing alone, this language suggests that the judgment did not provide for support. This obviously was not so. As we have noted, the judgment included a support provision, albeit in very general terms.

Instead, as the evidence and the positions of the parties evolved at the modification hearing, it became clear that what Judy was actually seeking was a modified support order reciting Donald's obligation in *fixed* terms under the percentage guidelines. The basis for this request was Judy's contention that the flexible arrangement under the judgment was not working because Donald was not satisfying the economic needs of the children. Thus, the modification proceeding focused on this question.

As a result, the issue at the modification proceeding was not whether the children's needs had increased such that a substantial change in circumstances had occurred.[5] In fact, Donald acknowledged that the children's needs had increased. And, based on this development, the family court determined that a change in circumstances had occurred—a finding not challenged on appeal. Instead, Donald argued: (1) that the judgment already accommodated this possible scenario, (2) that the judgment obligated him to meet such changed needs, and (3) that he was doing so. The trial court agreed.

For these same reasons, neither did the modification proceeding focus on Donald's ability to pay. Donald

---

[5] The law recognizes that such increased needs can constitute the requisite change in circumstances. *See Burger v. Burger*, 144 Wis. 2d 514, 524, 424 N.W.2d 691, 695 (1988).

did not resist Judy's motion on this ground, and the family court's decision did not deny Judy's modification request on this ground. To the contrary, the court's decision acknowledged Donald's high income levels[6] and also the substantial attorney's fee which Donald had recently earned from the personal injury settlement.

Understandably then, the family court's decision was based on its conclusion that the judgment obligated Donald to meet the children's current and changed needs and on its finding that Donald was satisfying this obligation. We now turn to the correctness of these determinations.

### 5. The Family Court's Ruling

We agree with Donald that the wording and structure of the divorce judgment were designed to accommodate any changes in circumstances. And we do not read Judy's trial or appellate argument to challenge this interpretation. Instead, Judy continues to argue that the flexible support arrangement has proven unworkable because Donald was not complying with the judgment. And, since she established a change in circumstances, Judy reasons that the family court was duty bound to modify the judgment. We now turn to these arguments.

■

The family court's determination that Donald was meeting his obligations under these changed circumstances represents a finding of fact. We will not disturb such a finding unless it is clearly erroneous. Section 805.17(2), STATS.; *Eckert v. Eckert*, 144 Wis. 2d 770,

---

[6] Donald earned $279,338 in 1989, $332,405 in 1990 and $258,587 in 1991.

774, 424 N.W.2d 759, 761 (Ct. App. 1988). In addition, when a finding of fact is premised on the court's assessment of the competing credibility of the parties, we must give due regard to the trial court's opportunity to make this assessment. Section 805.17(2).

Here, although the testimony of the parties differed, much of the evidence in this case supports the family court's determination that Donald was meeting the children's increased economic needs. In addition to satisfying all of his obligations under other provisions of the judgment, Donald's testimony and documentary evidence established contributions for the support of the children in excess of $35,000 for 1989, $45,000 for 1990, $39,597 for 1991 and $22,834 through August 1992. In contrast, when pressed for details as to which expenditures Donald was not satisfying, Judy's testimony often became imprecise and uncertain.[7] This evidence well supports the family court's factual determination that Donald was satisfying his obligation under the judgment to meet the current needs of the children.

■

Indeed, based on our reading of the record, it appears that Donald is expending moneys on the children's behalf beyond what the law might ordinarily require of a high income obligor. While the vague tone of the judgment's support language might tempt a less responsible obligor to pay less support, it also requires a responsible obligor to pay more if the situation calls for it. Here, the family court determined that Donald falls into the latter category. Under these circum-

---

[7] At one point, Judy acknowledged that Donald was meeting the children's needs, complaining only that he was not reimbursing her for additional moneys she was expending on the children.

stances, the court saw no need to alter the support provisions of the judgment. We affirm the court's discretionary determination to adhere to the present support provisions of the judgment.

Our conclusion disposes of Judy's appellate claims regarding the financial disclosure form, the reopening of the evidence, the adequacy of the evidence, the adequacy of the family court's consideration of the children's needs and Donald's ability to pay, and the consequences of the court's ruling that a change in circumstances had occurred. We now address Judy's remaining issues.

### 6. The Custodial Parent's Spending Discretion and Resong v. Vier

Judy argues that the family court should have modified the judgment's support provision because it represents an "in-kind" support order which strips her, as the primary custodial parent, of the right to make discretionary spending decisions as to how support money should be expended. As a corollary to this argument, Judy contends that she must agree to such an order before it can be enforced.

In support, Judy cites *Resong v. Vier*, 157 Wis. 2d 382, 459 N.W.2d 591 (Ct. App. 1990). In *Resong*, the court of appeals struck down a support provision diverting moneys which otherwise might have been allocated for support to a trust fund to meet the postmajority educational needs of the child. *Id*. at 385-86, 459 N.W.2d at 592. We conclude that this is not a *Resong* case for two reasons. First, we have already affirmed the trial court's ruling that Donald is meeting the economic needs of the children. Therefore, unlike *Resong*, no support moneys are diverted from the current economic needs of the children.

387

Second, while the payment scheme in this case does not channel the support moneys through Judy and thereby does deprive her, as the principal custodian, of spending discretion, we must remember that in *Resong* the family court *imposed* the arrangement on the custodial parent. In this case, Judy contracted with Donald to create this payment scheme, obtained significant consideration in exchange and then asked the family court to approve the arrangement. *Resong* does not say that a custodial party may not contract to relinquish spending discretion in exchange for other valuable consideration. And we see no reason why, in the proper case, the family court may not approve such an arrangement if the interests of the children and the custodial parent are otherwise properly protected.[8]

### 7. Percentage Guidelines

Finally, Judy argues that the family court was obligated to apply the percentage guidelines because neither party asked the court to deviate from them. Judy relies on the language of § 767.32(2), STATS., which provides that if the court revises a support provision, the court must use the percentage guidelines unless, pursuant to subsection (2m), "[u]pon request by a party," the court deems the use of such standards unfair after a consideration of the appropriate statutory factors.

In making this argument, Judy has the proverbial cart before the horse. Here, the family court chose *not*

---

[8] On this same basis, we reject Judy's argument that she must first consent to such a support order. By her contract with Donald for this type of order, Judy gave her consent.

*to revise the judgment* because the judgment already accommodated any changes in circumstances. The statute mandating the use of the percentage guidelines does not apply unless the court chooses to revise the judgment.[9]

### Conclusion

We uphold the family court's ruling that the divorce judgment accommodated the change in circumstances which occurred in this case. We also uphold the family court's finding that Donald was meeting all of the increased economic needs of the children pursuant to the judgment. We therefore conclude that the court did not misuse its discretion in denying Judy's modification motion.

*By the Court.*—Order affirmed.

[9] The family court also rejected the use of the percentage guidelines under *Parrett v. Parrett*, 146 Wis. 2d 830, 432 N.W.2d 664 (Ct. App. 1988), which holds that in a high income case it is "reasonable to refuse to apply guidelines based on statistical generalities when the facts before the court bear little relationship to a statistical norm." *Id.* at 842, 432 N.W.2d at 669. Judy contends that *Parrett* is no longer the law in light of the current statutory language of § 767.32, STATS., which mandates use of the guidelines in a modification setting.

We question Judy's contention that *Parrett* is no longer good law in light of the current language in § 767.32, STATS. However, we need not answer this question since, as we have already noted, the family court chose not to revise the judgment. The family court's invocation of *Parrett* was unnecessary.