IN RE the MARRIAGE OF: Marie E. HUBERT, Petitioner-Appellant.

v.

John P. HUBERT, Jr., Respondent.

Court of Appeals

*No. 90-0741. Submitted on briefs September 14, 1990.—Decided December 26, 1990.*

(Also reported in 465 N.W.2d 252.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Michael S. Heffernan/Linda Roberson* of *Stolper, Koritzinsky, Brewster & Neider, S.C.* of Madison.

On behalf of respondent, the cause was submitted on the brief of *Howard T. Healy/William L. Stroik* of *Di Renzo and Bomier* of Neenah.

Before Nettesheim, P.J., Scott and Anderson, JJ.

ANDERSON, J. Marie E. Hubert raises three issues: (1) whether the family court's treatment of John Hubert's accounts receivable as anticipated income rather than as an asset for property division was an error in the exercise of discretion; (2) whether the family court misused its discretion in ignoring the child support percentage standards and in failing to impose a trust on a portion of the child support; and (3) whether the family court improperly gave too much weight to the support objectives of maintenance, with the result that the award of permanent maintenance is unconscionably low.

Marie and John were married in Minnesota in 1974. During the first years of the marriage, while John completed his medical training as a cardiovascular thoracic surgeon, Marie taught until the parties' first child was

born, and then she assumed full-time responsibility for the home and children.

In late 1983, the parties moved to Wisconsin where John went into private medical practice, earning $207,831 during his first year. By 1988, John's income had grown to $965,310 and his estimated income for 1989 was expected to exceed $1,000,000.

John's income, as a cardiac surgeon, permitted the parties to develop and maintain a very high standard of living. In the four and one-half years they lived in Wisconsin they were able to pay off the mortgage on the mansion they purchased for $425,000, purchases in excess of $200,000 of furniture, more than $45,000 in oriental rugs and a $45,000 boat. They accumulated over $1,000,000 in assets and a sizeable retirement fund, and they established a savings and investment program for the children with an accumulation in excess of $20,000.

In a written decision, the family court ruled on the issues of John's accounts receivable, maintenance and child support. The parties entered into a stipulation on the issues of legal custody and periods of physical placement, and property division.

The family court reasoned that John's accounts receivable could be considered either as an asset, subject to property division, or as anticipated income, subject to consideration as a source of child support and maintenance. The court chose to treat the accounts receivable as anticipated income.

The family court held that the use of the percentage standard for child support would be unfair to John. The court, in considering Marie's budget, reduced her monthly expenses from more than $15,600 to approximately $10,000 and ordered monthly child support in the amount of $4000. The court reasoned that along with permanent monthly maintenance of $3000 and antici-

810

pated monthly income from the property division of $3750, that Marie would have an adequate monthly income of $10,750.

In ordering permanent maintenance of $3000 per month, the family court held that the facts and circumstances of the marriage did not justify any compensatory maintenance.

On appeal from the final judgment, Marie argues that the family court exceeded the limits of its discretion in making all three holdings.

We conclude that the family court properly held that the accounts receivable cannot be double counted and that the court did not exceed the limits of its discretion in classifying the receivables as anticipated income. We affirm that portion of the court's judgment.

We conclude that, although the family court properly deviated from the percentage standard, it exceeded the limits of its discretion in establishing child support. We also conclude that the court does, in limited circumstances, have the authority to establish a trust for post-majority educational needs. Therefore, we reverse the portion of the court's judgment dealing with child support and remand for further proceedings.

We also conclude that the family court erred in the exercise of discretion by not giving sufficient weight to the fairness objective of maintenance while giving too much weight to the need objective. We reverse the maintenance portion of the judgment and remand for further proceedings.

## I. ACCOUNTS RECEIVABLE

We first consider whether John's accounts receivable were properly classified as anticipated income rather than assets subject to property division. Whether an

item at issue should be classified as property subject to division involves the application of a statute to a particular set of facts. *Weiss v. Weiss,* 122 Wis. 2d 688, 692, 365 N.W.2d 608, 610–11 (Ct. App. 1985). This court owes no deference to the trial court. *Id.*

Generally, receivables are to be considered as assets subject to property division. *Ondrasek v. Ondrasek,* 126 Wis. 2d 469, 475–76, 377 N.W.2d 190, 193 (Ct. App. 1985). On occasion, in fixing child support and maintenance, the family court can consider the accounts receivable as anticipated income when determining the party's ability to pay. *See Johnson v. Johnson,* 78 Wis. 2d 137, 143, 254 N.W.2d 198, 201 (1977). However, it is error if the court double counts receivables. *See Overson v. Overson,* 125 Wis. 2d 13, 20, 370 N.W.2d 796, 799 (Ct. App. 1985).

The family court held that John's receivables would be considered as anticipated income, and not as a divisible asset, to enable him to continue his medical practice, to make maintenance and child support payments, and to support himself.[1]

Marie argues that this decision was error: she asks this court to include the constantly accruing receivables both as an asset subject to division and as anticipated income. We reject her argument.

Marie argues that *Hauge v. Hauge,* 145 Wis. 2d 600, 427 N.W.2d 154 (Ct. App. 1988), is authority for double counting of receivables under certain circumstances. She argues that there is no hardship to John, as the sole shareholder of the service corporation, to require him to

---

[1]John's service corporation had some $400,000 in accounts receivable with a stipulated net present value of $192,125. An equal division of the receivables would have given Marie cash of $96,625.

pay one-half of the net present value of the receivables as part of the property division and to use a portion of the remaining receivables to pay his maintenance and child support obligations because there is a constant cash flow that will reimburse him.

Marie misconstrues *Hauge*. *Hauge* goes no further than reiterating the rule against double counting; and, in a subsequent case, *Peerenboom v. Peerenboom,* 147 Wis. 2d 547, 553, 433 N.W.2d 282, 285 (Ct. App. 1988), we made it clear that receivables cannot be double counted.

The family court reasoned that if the receivables were treated as a divisible asset, John's cash flow would be adversely affected and he would not have the income sufficient to fulfill his professional and personal obligations. We conclude that this analysis was a proper exercise of the court's discretion, and we affirm the court's holding that the accounts receivable should be treated as anticipated income.

## II. CHILD SUPPORT

Marie sought child support for the parties' two children equal to 25% of John's gross income. *See* section 767.25(1j), Stats. She also requested that a portion of the child support be set aside in trust funds for the children's post-majority education.

The family court set child support at $4000 per month, finding that it would be unfair to John to apply the percentage standard. Further, the court held that it did not have the authority to establish trust funds for educational needs beyond the age of eighteen years.

A request for child support is addressed to the family court's discretion. *Wallen v. Wallen,* 139 Wis. 2d 217,

223, 407 N.W.2d 293, 295 (Ct. App. 1987). The court, in exercising its discretion, must consider the needs of the children, the needs of the parent with primary physical placement and the ability of the other parent to pay. *See Schwantes v. Schwantes,* 121 Wis. 2d 607, 630-31, 360 N.W.2d 69, 80 (Ct. App. 1984).

Generally, the family court is required to apply the percentage standards when it establishes child support payments. Section 767.25(1j), Stats. However, upon the request of either party the court may vary the child support payments established by the standards after considering the relevant statutory factors set forth in sec. 767.25(1m) and finding, by the greater weight of the credible evidence, that the use of the percentage standard is unfair to the children or to either of the parties. If the court does deviate from the percentage standard, it must state in writing: (1) its reasons why the percentage standard is unfair to the children or either party; (2) its reasons for the amount of the modification; and (3) the basis for its modification. Section 767.25(1n)(b).

Although the family court stated that the use of the percentage standard would be unfair to John, it failed to set forth a sufficient legal basis for reaching that conclusion, and this is an error in the exercise of discretion.

The family court relied on *Parrett v. Parrett,* 146 Wis. 2d 830, 841-42, 432 N.W.2d 664, 668-69 (Ct. App. 1988), for authority that the court may deviate from the percentage standard when its application would result in child support far beyond the children's needs. We agree that in cases where the parties have a substantial marital estate and income far beyond the average income of most people, the robotistic utilization of the percentage standards may give absurd results.

814

The family court must carefully consider the relevant statutory factors before it deviates from the percentage standards. In this process, the court must balance the welfare of the children against any perceived unfairness to either party.

In this case, the family court considered the maintenance received by Marie, the property division and the children's standard of living prior to the dissolution of the marriage. The court, however, ignored the other relevant statutory factors, including: (1) the desirability of Marie remaining in the home until the children completed high school; (2) the cost of day care if Marie worked outside of the home or the value of the custodial services she provided; (3) the children's educational needs; (4) the best interests of the children; and (5) other factors made relevant by the peculiarities of this case, for example, a substantial savings and investment program for the children.

The court's ruling that it would be absurd to continue to provide the children with the same standard of living they enjoyed during the marriage was error.[2] It ignores the statutory directive that the court consider what the children would have had had the marriage continued. Section 767.25(1m)(c), Stats.

We agree with the family court that the children did enjoy a standard of living far above that enjoyed by most children. This fact is not enough to deny the children the same standard of living in the future.

---

[2]Standard of living means the level of subsistence and comfort in everyday life that was enjoyed by the children because of their parents' financial resources. *See Sommer v. Sommer,* 108 Wis. 2d 586, 589-90, 323 N.W.2d 144, 146 (Ct. App. 1982).

Child support payments . . . are designed to maintain children, insofar as possible, at the economic level they would have enjoyed had there been no divorce. That the noncustodial parent has an obligation to share with his minor children the fruits of post-divorce economic improvements, there can be little doubt.

*Sommer v. Sommer,* 108 Wis. 2d 586, 590, 323 N.W.2d 144, 146 (Ct. App. 1982).

The award of child support must recognize that it is in the best interests of the children that they continue at a standard of living substantially equal to what they enjoyed before this action was commenced. The family court erred when it failed to articulate why the children should not be supported "at the economic level they would have enjoyed had there been no divorce." *Id.*

Here, the family court narrowly focused its inquiry on the reasonable or necessary amount John would have to pay to fulfill his duty of support. The court's establishment of child support in the amount John volunteered to pay, without an independent evaluation of all of the relevant factors, reflects arbitrariness rather than a process of reasoning from the facts of the record. *See Edwards v. Edwards,* 97 Wis. 2d 111, 117, 293 N.W.2d 160, 163–64 (1980). The court failed to adequately consider the relevant factors listed in sec. 767.25(1m), Stats.

We reverse the court's determination of child support and remand to the court for further proceedings not inconsistent with this portion of the decision.

Marie also requested that the family court order post-majority educational trusts for the children. In denying this request the family court held that it could not order John to pay child support beyond the age of

majority and that it did not have the authority to order the establishment of such trusts.

Section 767.25(2), Stats., provides the family court with the necessary authority to establish trusts for the benefit of the children:

> The court may protect and promote the best interests of the minor children by setting aside a portion of the child support which either party is ordered to pay in a separate fund or trust for the support, education and welfare of such children.

This statute gives the court an attractive means of providing for the future educational needs of children with child support that is paid *while the children are under the age of majority.*

In *Resong v. Vier,* 157 Wis. 2d 382, 392, 459 N.W.2d 591, 595 (Ct. App. 1990), we held that, except for limited circumstances, the family court could not impose a trust at the request of the obligor after child support had been established.

This case is distinguishable from *Resong.* Here Marie, the primary care giver, has requested that a trust be imposed; therefore, unlike *Resong,* this case does not present the specter of the court altering the authority of the custodial parent or stripping her of her decision-making authority.

We hold that the family court has the discretionary authority under sec. 767.25(2), Stats., to establish a trust for the post-majority needs of the parties' children.

## III. MAINTENANCE

The family court ordered permanent maintenance of $3000 per month, finding that along with monthly child support of $4000 and anticipated monthly income

of $3750, generated by the property division, Marie could meet what the court determined to be her reasonable expenses of $10,048.

A maintenance request is addressed to the family court's discretion. *Kildea v. Kildea,* 143 Wis. 2d 108, 115, 420 N.W.2d 391, 394 (Ct. App. 1988). The family court exceeds the limits of its discretion when the determination is based on a factual error or, under the facts and circumstances of a particular case, the amount of maintenance is either excessive or inadequate. *DeLaMatter v. DeLaMatter,* 151 Wis. 2d 576, 582-83, 445 N.W.2d 676, 679 (Ct. App. 1989).

Marie argues that the family court exceeded the limits of its discretion in basing its maintenance award on her needs without adequately considering the fairness objective of maintenance, and in failing to award her maintenance that would allow her to continue living at the marital standard of living.

The very high standard of living enjoyed by Marie and John during the marriage was made possible by the elevated income John earned as a cardiac surgeon. The parties resided in a mansion they purchased in 1983 for $425,000, and they paid off the entire mortgage in four years before selling the mansion for $500,000 during the pendency of this action. Their standard of living included a savings and investment program with assets in excess of $1,000,000, not including pension and retirement funds in excess of $300,000.

The evidence before the family court established that throughout the marriage Marie served as the principal housekeeper, mother and social hostess. From this evidence it is reasonable for the court to infer that John was able to focus all of his energy on his education, training and career.

818

Based on this evidence, the family court held that an award of compensatory maintenance was not justified and that maintenance should be based on Marie's needs. In determining Marie's needs, the family court reduced her monthly expenses to a level the court believed would allow Marie to own and maintain a $200,000 residence. The family court also excluded any amounts from Marie's budget for savings and investments.

## A. STANDARD OF LIVING

In considering an award of maintenance the family court must assess the feasibility of the recipient becoming self-supporting at a "standard of living reasonably comparable to that enjoyed during the marriage . . .." Section 767.26(6), Stats. There was no evidence presented that Marie could independently achieve a commensurate standard of living. Under these circumstances it was incumbent upon the court to consider whether sufficient maintenance could be required to permit Marie to have a standard of living that approached the marital level. *See* sec. 767.26(10).

The standard of living must be individualized for each case by considering the facts and circumstances of the marriage. *See Steinke v. Steinke,* 126 Wis. 2d 372, 386–87, 376 N.W.2d 839, 846–47 (1985). There is no requirement that maintenance is limited to an amount that will permit the recipient to enjoy an *average* standard of living.

> [W]here the parties had an acceptable standard of living . . . that . . . standard should be maintained if, under the facts and circumstances of the situation, such a result can be accomplished without unreasonable hardship to the supporting party.

*Bahr v. Bahr,* 107 Wis. 2d 72, 83, 318 N.W.2d 391; 397 (1982). Although "[l]ife styles must adjust to economic realities," *Jasper v. Jasper,* 107 Wis. 2d 59, 71, 318 N.W.2d 792, 798 (1982), "[a] court must not reduce the recipient spouse to subsistence level while the payor spouse preserves the pre-divorce standard of living." *LaRocque v. LaRocque,* 139 Wis. 2d 23, 35, 406 N.W.2d 736, 741 (1987).

In denying Marie's request to set maintenance at a level that would permit her to continue saving and investing, the family court did not individualize the standard of living. This case can be distinguished from *Liddle v. Liddle,* 140 Wis. 2d 132, 151–56, 410 N.W.2d 196, 204–06 (Ct. App. 1987), where the wife sought maintenance solely to allow her to continue a savings and investment program. Here a savings and investment plan is one of several reasons Marie is seeking maintenance: to fulfill her needs and to maintain a standard of living reasonably comparable to that which she enjoyed before the divorce. *Vander Perren v. Vander Perren,* 105 Wis. 2d 219, 228, 313 N.W.2d 813, 818 (1982).

The family court also failed to individualize the standard of living when it held that because of the change in Marie's circumstances John should not be required to pay maintenance that would allow Marie to continue to live in a residence equivalent to the marital home.

The family court's holding is not supported by any reasoning why such a home would be sufficient to fulfill Marie's needs. Such an analysis is necessary when confronted with John's testimony that he was looking for homes with prices up to 1.3 million dollars.

In the usual divorce, the socioeconomic levels of the parties cannot be maintained at the level they were

before the divorce. However, this is not the usual case. The court's arbitrary limitations on what price Marie should pay for a residence, arbitrary reduction of her monthly budget, and failure to consider a savings and investment program were error. Upon remand, the family court should consider a monthly budget for Marie that includes sufficient funds to allow her a *"standard of living reasonably comparable to that enjoyed during the marriage." Id.* (emphasis in original); *LaRocque,* 139 Wis. 2d at 35, 406 N.W.2d at 741. Then, if John can afford maintenance to achieve this standard, maintenance should be set accordingly. *See Bahr,* 107 Wis. 2d at 83, 318 N.W.2d at 397.

## B. FAIRNESS OBJECTIVE

The family court failed to consider the interrelationship of the fairness objective and the support objective of maintenance. The goal of these two distinct but related objectives is to have an equitable financial arrangement that adequately addresses the needs and earning capacities of both parties. By basing the maintenance award on Marie's needs, the court failed to fashion a fair and equitable arrangement and exceeded the limits of its discretion. *See Kennedy v. Kennedy,* 145 Wis. 2d 219, 223, 426 N.W.2d 85, 87 (Ct. App. 1988); *LaRocque,* 139 Wis. 2d at 32–33, 406 N.W.2d at 740.

The family court mistakenly limited its consideration of the fairness objective to Marie's contributions to John obtaining his medical degree and concluded that the record did not support compensatory maintenance. The fairness objective is much broader, it brings under its umbrella all of the noneconomic contributions Marie made during the marriage that contributed to John's

education, training and increased earning power. *See LaRocque,* 139 Wis. 2d at 37–38, 406 N.W.2d at 741–42.

The court erred when it held that John's economic contribution of an annual salary close to $1,000,000 was of more importance than Marie's non-economic contributions and held that "[m]aintenance is based on need . . .."

The family court also erred when it held that John should not have to work so hard and considered that John's income might decrease in the future if he hired an associate to relieve his workload. If John would voluntarily reduce his workload or hire an associate, the corresponding reduction in John's income, if any, is not a proper subject for speculation by the family court when making an initial award of maintenance. In trying to be fair to John, the court failed to be fair to Marie.

When it addressed the fairness factor, the family court did not consider as relevant factors the parties' good fortune and highly elevated income. *See Parrett,* 146 Wis. 2d at 838, 432 N.W.2d at 667. Under the circumstances of this case, the court should have taken these factors into consideration and then considered whether, in all fairness, Marie should share in this good fortune and elevated income.

Recognizing that there is no rule of law that Marie is entitled to a one-half share in John's total income, we hold it was incumbent upon the family court to approach the award of maintenance from a position where it recognizes that a fifty-fifty division of total income is meant to be a starting point for an award that is fair, meets the needs of the recipient, and allows the recipient

to achieve an equivalent standard of living. *See Enders v. Enders,* 147 Wis. 2d 138, 144–45, 432 N.W.2d 638, 641 (Ct. App. 1988). The use of such a starting point permits the family court to achieve one of the goals of the fairness objective: preventing the unjust enrichment of either party. *LaRocque,* 139 Wis. 2d at 33, 406 N.W.2d at 740.

John's monthly income from his medical practice is approximately $83,333 and, using the court's determination that income generated from each party's share of the property division would be $3750, John has a total monthly income of $87,083. The $4000 monthly award of maintenance to Marie equals no more than 4.6% of John's income. Not only is this inadequate, but it causes us to question if the court gave serious consideration to a near equal division of the total income in setting maintenance and whether the award results in John's unjust enrichment.

For the reasons set forth, we affirm that part of the decision of the family court determining that the accounts receivable would be considered as income. We reverse those portions of the decision setting the amount of child support and the amount of maintenance. We remand the issues of child support and maintenance to the family court for further proceedings consistent with this opinion.

Costs are denied to both parties.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded.