James H. CAMERON, Petitioner-Respondent,

v.

Jane P. CAMERON, n/k/a Jane Wise, Defendant-Appellant-Petitioner.

Supreme Court

*No. 95–0311. Oral argument December 3, 1996.—Decided April 22, 1997.*

(Also reported in 562 N.W.2d 126.)

 For the defendant-appellant-petitioner there was a brief by *Timothy M. Doyle* and *Thrasher, Doyle, Pelish & Franti, Ltd.,* Rice Lake and oral argument by *Timothy M. Doyle.*

For the petitioner-respondent there was a brief by *Donald L. Hoeft, Steven E. Antolak* and *London, Anderson, Antolak & Hoeft, Ltd.*, Minneapolis, MN and oral argument by *Steven E. Antolak*.

¶ 1. JANINE P. GESKE, J. Jane Wise (Wise) asks us to reverse the decision of the court of appeals affirming an order of the circuit court imposing a trust on child support arrearages owed by her former husband, James Cameron (Cameron).[1] Pursuant to that order, Cameron and Wise jointly own the trust, but disbursements are controlled by the circuit court. The question presented is whether the circuit court erred by imposing a trust on past due child support owed by Cameron when it made no finding that Wise was unable or unwilling to wisely manage the child support money owed.[2] We hold that in this case, the circuit court erred when it imposed a trust on child support arrearages without the consent of Wise, the primary custodian, or without any evidence to support a finding that Wise was unable or unwilling to wisely manage that support money. We therefore reverse the order of the circuit court creating the trust and remand for further proceedings consistent with this opinion.

¶ 2. The Sawyer County circuit court, Norman L. Yackel, granted a divorce to Wise and Cameron in the spring of 1987. The divorce judgment included an order

---

[1] *Cameron v. Cameron*, 197 Wis. 2d 618, 541 N.W.2d 164 (1995).

[2] Wise also asks us to decide whether a trust is in the best interest of the children if at its inception the trust does not provide for a disposition of trust funds once the youngest child reaches the age of majority. Because we reverse the order creating the trust, we need not decide this second question.

for joint custody and gave Wise primary physical placement of the couple's three minor children. Under the terms of the divorce judgment, Cameron was to pay as child support the greater of 29% of his gross monthly income from all sources, or the sum of $4,640.00 per year. The court imposed interest at the statutory rate of 1.5% per month on any amount of child support unpaid. At that time the parties did not ask that any of the child support money be placed in a trust for the benefit of the children. The record indicates that Cameron made some payments toward his child support obligation.

¶ 3. On December 15, 1993, Wise moved the circuit court for an order requiring Cameron to immediately pay all past due child support and to determine the appropriate amount of current child support.[3] Cameron filed a cross-motion on April 18, 1994, seeking, among other things, a "fair and equitable disposition of all amounts claimed due as child support" and a modification of the existing child support order. In his memorandum addressing those motions, Cameron urged the circuit court to place any existing arrearages into a separate trust for the support, education and welfare of the children, citing Wis. Stat. § 767.25(2) (1993–94).[4]

---

[3] Wise's motion also included a motion to find Cameron in contempt for his failure to pay child support as previously ordered by the court, and for implementation of an immediate income assignment for enforcement of child support.

[4] **Wis. Stat. § 767.25 (2)** The court may protect and promote the best interests of the minor children by setting aside a portion of the child support which either party is ordered to pay in a separate fund or trust for the support, education and welfare of such children.

All future statutory references are to the 1993–94 volume unless otherwise noted.

¶ 4. On September 1, 1994, the circuit court held a hearing on the parties' motions. In a written decision filed December 27, 1994, the circuit court found that Cameron owed $118,140, including interest, in past-due child support through year-end 1993.[5] The court refused to retroactively reduce Cameron's child support obligation, and also denied Cameron's cross-motion for equitable credit for items he purchased for the children in the years between the divorce and these motions. The court set Cameron's prospective support payments at a flat rate of $2,500.00 per month, instead of maintaining the prior percentage formula. The $2,500 was determined to be the approximate equivalent of 29% of Cameron's current income, but an amount more easily calculated. The prospective support amount is not at issue in this review.

¶ 5. Cameron argued that the court could retroactively reduce the child support order, based on our holding in *Schulz v. Ystad*, 155 Wis. 2d 574, 456 N.W.2d 312 (1990), as applied to support orders entered before August 1, 1987. *See* Wis. Stat. § 767.32(1m) (1985–86). The circuit court found that Cameron failed to meet the *Schulz* criteria for retroactive reduction. [6]

---

[5] The circuit court also determined that Cameron's child support obligation for 1994 would be calculated consistent with its decision based on $30,000.00 per year. It is not clear from the circuit court's decision whether any 1994 arrearages were to be placed in the trust or paid to Wise outright.

[6] In December, 1993, when Wise filed her motions for payment of past due support, and in April, 1994, when Cameron filed his cross-motion to modify the existing support order, our holding in *Schulz v. Ystad*, 155 Wis. 2d 574, 456 N.W.2d 312 (1990) applied. In *Schulz* we said that a court could retroactively grant equitable credit against child support arrearages

¶ 6. Finally, the circuit court addressed disposition of the arrearages owed. The court's solution, originally proposed by Cameron, was to create a trust funded by the arrearages, including interest, owed by Cameron. The funds were to be placed in the trust for the benefit of the children. The circuit court provided that Wise and Cameron would own the trust, but the court would control the disbursements.

¶ 7. Before deciding to impose the trust, the court found that Cameron's business was continuing to operate profitably. The court went on to say that it had "no way of knowing how profitable the corporation will be in the future." The court specifically found "that the

---

stemming from an order or judgment entered before August 1, 1987, the effective date of Wis. Stat. § 767.32(1m). Otherwise, we read Wis. Stat. § 767.32(1m) to apply only prospectively in prohibiting credits against support arrearages.

In 1993 Wis. Act 481, §§ 118 and 119, the legislature amended Wis. Stat. § 767.32(1m) and (1r) to "unambiguously provide that a trial court cannot grant credit for direct payments for support made in a manner other than that prescribed in the order or judgment providing for support." *Douglas Cty. Child Support v. Fisher*, 200 Wis. 2d 807, 813, 547 N.W.2d 801 (Ct. App. 1996). The *Douglas* court read the 1993 amendments to apply retroactively, pursuant to sec. 9326(2) of 1993 Wis. Act 481. Thus, as of June 11, 1994, a court has no discretion to grant credits against support arrearages regardless of when the judgment or order was entered. 200 Wis. 2d at 814.

This limitation on *Schulz* does not affect our holding here with regard to the impropriety of imposing the trust mechanism on arrearages owed by Cameron. Imposition of the trust on arrearages did not retroactively or prospectively reduce the amount of child support due under the original order. Despite Cameron's cross-motion, the circuit court declined to grant Cameron any credits against the arrearages owed, and thus did not violate the amendments to Wis. Stat. § 767.32(1m).

specialty coffee business is volatile. Mr. Cameron's income could change substantially. There is no certainty that his income will continue to increase." The court concluded that "[a] trust assures the children, as best can be expected, sufficient resources for their support in the event James Cameron is unable to provide for the children" at the rate of $2,500.00 per month.

¶ 8. Wise appealed. The court of appeals upheld the lower court's authority to establish the trust, citing *Resong v. Vier*, 157 Wis. 2d 382, 391–92, 459 N.W.2d 591 (Ct. App. 1990). The court of appeals concluded that once support has been awarded absent a trust, the circuit court must apply a "necessary to the best interest of the child" standard before imposing a trust under Wis. Stat. § 767.25(2). 197 Wis. 2d at 625. The appellate court further held that a circuit court may impose a trust on support arrearages if it makes the proper factual findings. *Id.* at 626. Such findings are those which demonstrate that the trust is necessary to protect the children's best interests. *Id.*

¶ 9. When the circuit court set up the trust here, it considered factors set out in Wis. Stat. § 767.25(1m),[7]

---

[7] Wis. Stat. § 767.25(1m) (1993–94) provides:

Upon request by a party, the court may modify the amount of child support payments determined under sub. (1j) if, after considering the following factors, the court finds by the greater weight of the credible evidence that use of the percentage standard is unfair to the child or to any of the parties:

(a) The financial resources of the child.

(b) The financial resources of both parents as determined under s. 767.255.

(bj) Maintenance received by either party.

(bp) The needs of each party in order to support himself or herself at a level equal to or greater than that established under 42 USC 9902(2).

(bz) The needs of any person, other than the child, whom either party is legally obligated to support.

but essentially based its decision to impose a trust on a single finding. Specifically, the circuit court found that there was a potential for Cameron's income from his coffee business to change substantially over the remaining years of his children's minority. The court of appeals acknowledged that the circuit court did not explicitly find that the trust imposed on Cameron's arrearages was "necessary to the best interest of the children." Nevertheless, the appellate court affirmed the lower court by concluding that the circuit court's reasoning satisfied that standard, and that imposition

(c) The standard of living the child would have enjoyed had the marriage not ended in annulment, divorce or legal separation.

(d) The desirability that the custodian remain in the home as a full-time parent.

(e) The cost of day care if the custodian works outside the home, or the value of custodial services performed by the custodian if the custodian remains in the home.

(ej) The award of substantial periods of physical placement to both parents.

(em) Extraordinary travel expenses incurred in exercising the right to periods of physical placement under s. 767.24.

(f) The physical, mental and emotional health needs of the child, including any costs for health insurance as provided for under sub. (4m).

(g) The child's educational needs.

(h) The tax consequences to each party.

(hm) The best interests of the child.

(hs) The earning capacity of each parent, based on each parent's education, training and work experience and the availability of work in or near the parent's community.

(i) Any other factors which the court in each case determines are relevant.

Although the circuit court here did not specifically cite Wis. Stat. § 767.32(2m) (1993–94), that statute authorizes the court to consider the factors set out in Wis. Stat. § 767.25(1m) when considering a request for modification of support.

of the trust on Cameron's arrearages was a reasonable exercise of the court's discretion.[8]

¶ 10. The question before us is under what circumstances can a circuit court can impose a trust on child support arrearages. Neither party contends that the circuit court lacked authority to find that Cameron owed arrearages under the original support order. The question is whether the imposition of a trust on those arrearages is appropriate in the absence of any evidence to support a finding that Wise either consented to the trust, or was unable or unwilling to wisely manage those arrearages.

¶ 11. Placing support arrearages in a trust jointly owned by the parents and controlled by the court is a substantial alteration of the custodial parent's decision making authority. After a review of the statutes and cases concerning child support and child custody matters, we conclude that statutory and case law do not directly control our answer to this question. However, we discern from those sources a legislative scheme focusing on the best interests of the children, and also taking into consideration the needs and abilities of the custodial parent, and the financial circumstances of both parents.

¶ 12. The circuit court has discretion to determine and adjudge the amount a person should reasonably contribute to the support of his or her child, and shall also determine how that sum should be paid.

---

[8] Wise also appealed the circuit court's decision to permit Cameron's $6,000.00 contribution toward her attorney's fees to be taken from the trust. The court of appeals reversed this part of the lower court order, *Cameron v. Cameron*, 197 Wis. 2d 618, 630, 541 N.W.2d 164 (Ct. App. 1995), and Cameron does not raise it as an issue here.

Wis. Stat. §§ 767.25, 767.08(2)(b). The court properly exercises its discretion when it considers the needs of the primary custodian and the children, as well as the ability of the other parent to pay. *Jacquart v. Jacquart*, 183 Wis. 2d 372, 381, 515 N.W.2d 539 (Ct. App. 1994).

¶ 13. As in the case of a modification of a support order, we will uphold the circuit court's imposition of a trust on arrearages if the court examined the relevant facts, made the proper findings, applied a proper standard of law and reached a conclusion that a reasonable judge could reach. *See Mary L.O. v. Tommy R.B., Jr.*, 199 Wis. 2d 186, 193, 544 N.W.2d 417 (1996). Absent the required findings, we may independently review the record. *See Kastelic v. Kastelic*, 119 Wis. 2d 280, 285, 350 N.W.2d 714 (Ct. App. 1984). When there is a failure to make findings of fact, we may affirm the judgment if it is clearly supported by a preponderance of the evidence, reverse the judgment if it is not so supported, or remand for the making of findings and conclusions. *State v. Williams*, 104 Wis. 2d 15, 22, 310 N.W.2d 601 (1981).

¶ 14. Finally, if an exercise of discretion is based upon an error of law, the circuit court has acted beyond the limits of its discretion and its decision will not stand. *Resong*, 157 Wis. 2d at 387. Our decision in *Schulz* requires us to consider whether the circuit court erroneously exercised its discretion by ordering that the arrearages be placed in a trust available for the future needs of the minor Cameron children, instead of regarding the arrearages as presently due and owing. 155 Wis. 2d at 583.

¶ 15. We first consider the statutory scheme for child support and custody. When the court grants a divorce, it may order either or both parents to pay an amount reasonable or necessary to fulfill a duty to support a child. Wis. Stat. § 767.25(1) (1987–88).[9] Except as otherwise provided, the court shall determine child support payments by using a percentage standard set by the department of health and social services. Wis. Stat. § 767.25(1j). A party ordered to pay child support under ch. 767, Stats., shall pay simple interest at the rate of 1.5% per month on any amount unpaid. Wis. Stat. § 767.25(6). In Wisconsin, there is an expectation that the primary custodian shares his or her income directly with the children. Wis. Adm. Code ch. HSS 80 Preface (1995); *Cook v. Cook*, 208 Wis. 2d 166, 184, n. 13, 560 N.W.2d 246, 253 (1997). When a court initially orders support payments, it may protect the minor children's best interests by establishing a separate fund or trust for the support, education and welfare of the children. Wis. Stat. § 767.25(2).

¶ 16. As of June 11, 1994, a circuit court may modify only prospectively the amount of child support due under an order or judgment providing for child

---

[9] **767.25 Child support. (1)** Whenever the court approves a stipulation for child support under s. 767.10, enters a judgment of annulment, divorce or legal separation, or enters an order or a judgment in an action under s. 767.02(1)(f) or (j) or 767.08, the court shall do all of the following:

(a) Order either or both parents to pay an amount reasonable or necessary to fulfill a duty to support a child. The support amount may be expressed as a percentage of parental income or as a fixed sum, or as a combination of both in the alternative by requiring payment of the greater or lesser of either a percentage of parental income or a fixed sum.

support pursuant to Wis. Stat. § 767.32(1m). But the question before us does not concern a modification of the current support order. If that were the case, we would follow the support modification statute, Wis. Stat. § 767.32(1).

¶ 17. A trust is permissible when it meets the best interest of the child. Wis. Stat. § 767.25(2). It is not clear from the language of Wis. Stat. § 767.25(2) whether it applies only to trusts established by the original order for support. The placement of this provision in the section entitled **Child support**, and not within Wis. Stat. § 767.32, **Revision of certain judgments**, suggests a legislative approval of trusts established as part of the original support scheme. The statutes, however, do not explicitly preclude the imposition of a trust as a repository for support arrearages.

¶ 18. Concluding that no statute controls the parameters for imposition of such a trust, we next consider relevant common law. *Schulz* did not address the use of a trust as a discretionary remedy for disposition of child support arrearages. One month after our decision in *Schulz*, the court of appeals considered the imposition of a trust on child support arrearages in *Resong*, 157 Wis. 2d 382.

¶ 19. In *Resong* the plaintiff and defendant divorced after 24 years of marriage. The court ordered the husband to pay a set monthly amount in child support for their three minor children. He failed to remain current in those payments and the wife later sought to collect the arrearages. At that point the husband moved to reduce his child support obligation from 17% of his gross income to 17% of his salary only. Alternatively, he asked that some of the support money be placed in a trust for the post-majority education of the couple's remaining minor child. 157 Wis. 2d at 385.

¶ 20. The circuit court determined that the existing support order of $900 month was not necessary for the last child's support, but declined to reduce the husband's obligation. Instead, the court ordered all monthly payments over $600 placed in a trust for the child's college education. *Id.* at 385–86.

¶ 21. The *Resong* court of appeals held that the lower court erred in considering the child's post-majority expenses when it set the current child support. 157 Wis. 2d at 385. On that basis, the court of appeals reversed the order and remanded for further proceedings. *Id.* The *Resong* court then turned to the establishment of the trust. *Id.* at 391.

¶ 22. The *Resong* court cautioned that imposition of a trust should not be undertaken lightly. *Resong* drew a parallel between eliminating a custodial parent's right to make spending decisions and the gravity of altering the parent's custodial power. *Id.* at 391–92. In dicta, the *Resong* court concluded that once support has been awarded absent a trust, the circuit court must apply the "necessary to the best interest of the child" standard of the custody modification statute if it wishes to establish a child support trust. *Id.* at 392. We draw from *Resong* the admonition that when such a substantial alteration in the decision making authority of a parent is proposed, a court should exercise restraint.

¶ 23. Two cases decided after *Resong* considered imposition of a trust as part of the original support order. In *Hubert v. Hubert*, 159 Wis. 2d 803, 811, 465 N.W.2d 252 (Ct. App. 1990), the trust was designated for the post-majority education needs of the children. There, the former husband was a highly paid cardiac surgeon and the custodial parent sought a percentage of her former husband's gross income as child support.

She also asked that part of that percentage be placed in a trust for their children's post-majority education. *Hubert*, 159 Wis. 2d at 813. The circuit court set support at $4,000 per month, ruling that application of the percentage formula would be unfair to the payor. The court also held that it lacked authority to impose a trust for post-majority needs. *Id.* at 813.

¶ 24. The *Hubert* court of appeals first criticized the lower court's imposition of a flat monthly support amount. According to the court of appeals, the circuit court in *Hubert* failed to consider certain statutory factors when it deviated from the percentage standard. 159 Wis. 2d at 815. The circuit court gave no explanation as to why the children should not be supported at the economic level they would have enjoyed had there been no divorce, only stating that it "would be absurd" to continue to maintain the children at that same standard of living. *Id.* at 815. Instead, the circuit court established child support in the amount the father volunteered to pay, without an independent examination of all of the relevant statutory factors. This determination, according to the court of appeals, was arbitrary and not reasoned from the facts in the record. *Id.*

¶ 25. The *Hubert* court next addressed the custodial parent's request for imposition of a trust. The court of appeals held that a court has discretion under Wis. Stat. § 767.25(2) to create a trust for post-majority needs, as long as the funds are paid to the trust during the children's minority. *Id.* at 817. Unlike the facts in *Resong*, in *Hubert* it was the primary care giver who requested the trust. Thus there arose no "specter of the court altering the authority of the custodial parent or stripping her of her decision-making authority." *Id.*

¶ 26. Similarly, in the most recent case affirming a trust as part of the original support order, we were

not asked to strip the custodial parent of decision-making authority. *Mary L.O.*, 199 Wis. 2d 186. There we focused on use of the percentage standard of Wis. Stat. § 767.51(4m) when a court orders child support in a paternity action. The child's father was a professional football player with an exceptionally high current income but a limited career span expectancy. *Id.* at 190. Because the funds might not be available later, the lower court ruled that the child's best interests were served by ordering the father to pay child support according to the percentage guidelines. On review we concluded that the application of the percentage standard in *Mary L.O.* was not an erroneous exercise of the circuit court's discretion to fashion a child support order serving the child's best interests. *Id.* at 199.

¶ 27. The second issue in *Mary L.O.* was whether the circuit erred by imposing a trust on the monthly support payments in excess of $1,500.00. *Id.* at 200. We held there that the trust was permissible under Wis. Stat. § 767.51(5)(e), a paternity statute, but that any trust payments must be made from child support paid while the child is still a minor. *Id.* at 201.

¶ 28. Among the key distinctions between *Mary L.O., Hubert,* and this case is that in *Mary L.O.* and *Hubert* the custodial parent did not object to the trust. In *Mary L.O.* and *Hubert,* the trust was imposed solely on prospective support money and not on arrears. Moreover, part of the *Mary L.O.* trust fund was a liquid "discretionary fund" from which the custodial parent could make the decision to withdraw money without prior approval of the non-custodial parent. 199 Wis. 2d at 192. Finally, in *Mary L.O.* the circuit court found that the father's high income as a professional football player was for a limited duration. The father's ability to continue to support his child, based on his education

and prior work experience, was questionable. *Id.* at 195–96. Based on all of the above distinctions, affirmance of the trusts established in *Mary L.O.* and *Hubert* does not require affirmance of the trust here.

¶ 29. We conclude that no statute or prior case law directly controls the question before us. We are persuaded, however, that the standard articulated in *Resong*, as we modify it here, is appropriate for assessing the limited circumstances under which a trust may be imposed on child support arrearages. The *Resong* standard involves determining whether the trust is necessary to the best interests of the child, parallel to the statutory scheme for child custody matters. Today we modify that standard, to require a determination only that the trust is in the best interests of the child. We draw upon another principle from the statutes governing revision of custody orders to establish the required burden of proof.[10] When a non-custodial parent seeks imposition of a trust on arrearages owed, that parent must demonstrate by substantial evidence that the trust, which substantially alters the custodial parent's decision making authority, is in the best interests of the children. *See* Wis. Stat. § 767.325(1).[11]

---

[10] Although here we draw upon principles identified in the revision of custody and placement statute, Wis. Stat. § 767.325, we do not transplant its requirements governing the timing and manner of custody modifications to the imposition of trusts on child support arrearages.

[11] Wis. Stat. § 767.325 Revision of legal custody and physical placement orders.

(1) SUBSTANTIAL MODIFICATIONS. (a) *Within 2 years after initial order*. Except as provided under sub. (2), a court may not modify any of the following orders before 2 years after the initial order is entered under s. 767.24, unless a party seeking the modification, upon petition, motion, or order to show cause shows

¶ 30. The *Resong* standard which we adopt as modified also requires, when the primary custodian does not consent to the trust, a factual finding as to whether the primary custodian was incapable or unwilling to wisely manage the child support money. Without such a finding, a court may not strip the primary custodian of his or her decision-making authority.

¶ 31. There are several reasons for our conclusion that the circuit court erred when it imposed a trust on the arrearages owed by Cameron. First, unlike the custodial parents in *Mary L.O.* and *Hubert*, Wise did

by substantial evidence that the modification is necessary because the current custodial conditions are physically or emotionally harmful to the best interest of the child:

 1. An order of legal custody.

 2. An order of physical placement if the modification would substantially alter the time a parent may spend with his or her child.

 (b) *After 2-year period.* 1. Except as provided under par. (a) and sub. (2), upon petition, motion or order to show cause by a party, a court may modify an order of legal custody or an order of physical placement where the modification would substantially alter the time a parent may spend with his or her child if the court finds all of the following:

 a. The modification is in the best interest of the child.

 b. There has been a substantial change of circumstances since the entry of the last order affecting legal custody or in the last order substantially affecting physical placement.

 2. With respect to subd. 1, there is a rebuttable presumption that:

 a. Continuing the current allocation of decision making under a legal custody order is in the best interest of the child.

 b. Continuing the child's physical placement with the parent with whom the child resides for the greater period of time is in the best interest of the child.

 3. A change in the economic circumstances or marital status of either party is not sufficient to meet the standards for modification under subd. 1.

not consent to imposition of a trust on the support money owed.

¶ 32. Second, the circuit court failed to make, and the court of appeals failed to require, any factual findings suggesting that Wise was incapable or unwilling to wisely manage the child support money. *Resong*, 157 Wis. 2d at 392. To the contrary, the circuit court found that Wise was running her own business successfully and appeared to be an astute business person when testifying. Despite Cameron's significant underpayment of his child support obligation, the minor Cameron children "got along" under Wise's management of the $7,000 or $8,000 per year Cameron supplied, and her own resources.

¶ 33. Third, Cameron requested the trust, but failed to show by substantial evidence that a trust substantially altering the decision making authority of the primary custodial parent, was in the best interests of the children.

■■

¶ 34. Thus, under the *Resong* standard that we modify here, it was an erroneous exercise of discretion for the circuit court to dictate how the arrearages owed by Cameron should be controlled. In the absence of any findings that Wise consented to the trust, or was unable or unwilling to wisely manage the support money, it is in the best interest of the children to leave the decision-making authority over the support arrearages solely to Wise, the primary custodian.

■■

¶ 35. Cameron argues that the children have "gotten along" over the years and thus he should not be forced to pay the arrearages. This argument flies in the face of the original support order and also disregards the standard of living to which children of divorced

107

parents are entitled. When a court sets an amount of child support, it is bound to consider the needs of the children, the needs of the parent with primary physical placement, and the ability of the other parent to pay. *Edwards v. Edwards*, 97 Wis. 2d 111, 116, 293 N.W.2d 160 (1980). The court also considers the level of subsistence and comfort in everyday life that was enjoyed by the children because of their parents' financial resources. *Hubert*, 159 Wis. 2d at 815 n.2.

¶ 36. The standard of living for children of divorced parents is not capped at the standard of living enjoyed at the time of divorce. It accommodates the parents' subsequent financial prosperity or adversity. The standard is simply that which the children would have enjoyed had the marriage continued. Wis. Stat. § 767.25(1m)(c). *See also Sommer v. Sommer*, 108 Wis. 2d 586, 590, 323 N.W.2d 144 (Ct. App. 1982) (children are entitled to share in the "fruits of post-divorce economic improvements" of their parents).

¶ 37. The interests of children of divorced parents are at the heart of our child support system. *Greenwood v. Greenwood*, 129 Wis. 2d 388, 392, 385 N.W.2d 213 (Ct. App. 1986). While the children's interests are the focus, parents have cognizable interests too. For example, the purpose of imposing interest on unpaid child support obligations is to encourage prompt payment of current support "for the benefit of the child *and the custodial parent*." *Greenwood*, 129 Wis. 2d at 392–93 (emphasis added). Another purpose of the interest requirement is to provide some compensation for "recipients" who do not receive timely payments. *See Greenwood*, 129 Wis. 2d at 393. There are important policy reasons for the legislature's

encouragement of timely support payments. "Payment of past due arrearages is . . . to be encouraged, for not only have the child and the custodial parent been deprived of the payments over time, but the noncustodial parent, contrary to court order, has enjoyed the use and benefit of those funds." *Id.* Other jurisdictions hold a similar perspective.

> "If one parent is allowed to improvidently close his eyes and wallet to his obligations so as to require the other parent to utilize an added portion of his or her assets or income to fill that void, the children's right to adequate support is effectively diminished. . . .To the extent that the (custodial parent) has been forced to expend child support funds for (obligations of the noncustodial parent) that otherwise would have been available for other needs, the court must conclude that the 'best interests' of (the children) have been impaired by the defendant's conduct."

*Hoefers v. Jones*, 672 A.2d 1299, 1306–07 (N.J. Super Ct. Ch. Div. 1994), *aff'd*, 672 A.2d 1177 (N.J. Super Ct. App. Div. 1996).

¶ 38. Thus we conclude that in this case, the order of the circuit court establishing the trust improperly benefited Cameron, the parent responsible for the arrearages. Wise was forced to meet a large part of Cameron's child support obligation for at least the years 1987 through 1993 with her own resources.

¶ 39. A circuit court may enforce an order for child support by contempt proceedings, an account transfer under § 767.267, or through other enforcement mechanisms as provided under § 767.30. Wis. Stat. § 767.08(2)(c). Were we to uphold the trust mechanism in this case, we would indeed be converting support law to "a sort of sporting lottery." *Schulz*, 155 Wis. 2d at 606 (Day, J., dissenting). Upholding the

trust here would signal non-custodial parents that non-payment of support is worth the gamble, because once arrearages reached a certain magnitude the court might return at least partial ownership of the support money to the delinquent payor in the form of a trust. We will not sanction such gamesmanship at the expense of children, primary custodians who meet their obligations, and the taxpaying public. When the non-custodial parent seeks a trust on arrearages, he or she must prove by substantial evidence that a substantial alteration in the decision making authority of the primary custodian is in the best interests of the children.

¶ 40. We need not consider that part of the court of appeals' decision concerning final disposition of any remaining trust funds after the Cameron children reach majority. Nonetheless, we observe that the court of appeals left open the possibility that unspent arrearages will be returned to Cameron. This possibility circumvents the circuit court's refusal to reduce the originally ordered support amount.

¶ 41. The circuit court erred in one other regard. It acted to dispose of the past amounts owed by gauging the future support needs of the Cameron children. We do not doubt that the circuit court was attempting to serve the best interests of the children when it found that Cameron's coffee business was volatile. Nevertheless, we discern no basis in the record for the court's finding.

¶ 42. The fact that Cameron had little income from his business in the early years does not support the finding that his business, operating profitably for the last several years, will at some point in the future take a serious downward turn, or cease altogether as

was likely under the facts of *Mary L.O.* We are hard pressed to identify any businessperson possessing a "certainty that his income will continue to increase." The mere lack of certainty does not supply the evidentiary foundation for a finding of business volatility.

¶ 43. A trust funded with money earmarked for *past* needs is not the proper mechanism by which to address *future* support needs. The modification mechanism of Wis. Stat. § 767.32(1) remains available to Cameron should he, in the future, contend that circumstances have changed such that he is unable to meet his current support obligation of $2,500 per month.

¶ 44. Thus, for all of the above reasons, we reverse the decision of the court of appeals affirming the order of the circuit court imposing a trust on support arrearages. In establishing the trust without Wise's consent, the circuit court failed to make any factual findings regarding Wise's ability and willingness to wisely manage the support money. The circuit court also misapplied the law in this case by using a trust mechanism, funded by arrearages, to meet potential future support needs.

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded to the circuit court to vacate the order imposing the trust and for further proceedings consistent with this opinion.