COURT OF APPEALS
DECISION
DATED AND FILED

August 5, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1393**

STATE OF WISCONSIN

Cir. Ct. No. 2013FA132

IN COURT OF APPEALS
DISTRICT III

IN RE THE MARRIAGE OF:

AMY J. TREVINO,

JOINT-PETITIONER-RESPONDENT,

LINCOLN COUNTY CHILD SUPPORT AGENCY,

RESPONDENT,

V.

KLINT TREVINO,

JOINT-PETITIONER-APPELLANT.

APPEAL from an order of the circuit court for Lincoln County: JAY R. TLUSTY, Judge. *Affirmed.*

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Klint Trevino, pro se, appeals an order modifying child support.  He argues that the circuit court erred by failing to rule on his motion to compel discovery and by failing to issue a subpoena duces tecum to compel the production of a document.  He also asserts that the court erred by retroactively ordering a change in child support.  Finally, he argues that the court erroneously exercised its discretion in various ways by modifying his child support obligation.  We reject these arguments and affirm.

## BACKGROUND

¶2     Klint and Amy Trevino were married in August 2005 and filed a joint petition for divorce in August 2013.[1]  At the time of filing, Klint and Amy had three minor children together.  The parties reached a marital settlement agreement (MSA), which was incorporated into a divorce judgment entered on April 12, 2016.

¶3     Pursuant to the MSA, Amy was granted sole legal custody and primary physical placement of the parties' children.  The MSA provided that Klint would have periods of physical placement "at reasonable times upon reasonable notice," but it also set forth a "default schedule" that would apply "in the event the parties [could not] agree" as to what reasonable placement would be.  The MSA further provided that Klint would pay $800 per month in child support.

---

[1] Because the parties share a surname, we refer to them by their first names throughout the remainder of this opinion.  We note that Amy was represented by counsel in the circuit court but, like Klint, is self-represented on appeal.

¶4 In April 2018, Klint filed a motion to prevent Amy from relocating to the Madison area with the children and for joint legal custody and primary physical placement. Thereafter, in May 2018, Amy filed a motion seeking permission to relocate with the children to the Baraboo or Madison area "for employment and advancement in the employment circle." Later that month, Amy filed an amended motion seeking permission to relocate to the Baraboo area.

¶5 In September 2018, a court commissioner entered an order granting Amy's motion to relocate to the Madison/Baraboo area and denying Klint's motion for joint legal custody and shared physical placement. Amy subsequently relocated to the Madison area with the children. Klint sought de novo review of the court commissioner's decision, and a de novo hearing took place over multiple days during October 2018 and February and April 2019.

¶6 On June 11, 2019, Amy filed a motion "amending the pleadings from the original filings in April 2018 to specifically request [that] the child support be modified." After Amy filed that motion, the de novo hearing continued over multiple days during July, September and December 2019. The parties then filed briefs regarding the outstanding issues in the case. Additional hearings took place on December 15, 2020, and January 8 and February 3, 2021. On February 18, 2021, the circuit court issued a written decision denying Klint's motion to prevent Amy from relocating with the children and denying his motion for joint legal custody and primary physical placement.

¶7 Klint subsequently filed two motions to dismiss Amy's motion to modify child support. The circuit court held additional hearings on August 25, 2021, September 22, 2021, November 19, 2021, and January 18, 2022. The court

orally denied Klint's second motion to dismiss during the January 18, 2022 hearing.

¶8 Thereafter, on July 25, 2022, the circuit court entered a written order granting Amy's motion to modify child support. The court first determined that a substantial change in circumstances had occurred since the entry of the last order setting child support, which was the parties' April 2016 divorce judgment. The court noted that, under WIS. STAT. § 767.59(1f)(b)2. (2023-24), "the expiration of 33 months after the date of the entry of the last child support order" gives rise to a "rebuttable presumption of a substantial change in circumstances sufficient to justify a revision of" the prior child support order.[2]

¶9 The circuit court found that this presumption "ha[d] not been rebutted." The court reasoned that in the original divorce judgment, Klint

> was ordered to pay child support in the amount of $800.00 per month commencing immediately. There is no documentation in the file as to how the amount of $800.00 was arrived at. If, however, $800.00 is divided by 29% the result would be $2,758.62 per month for gross income attributable to [Klint]. If gross monthly income of $2,758.62 would be multiplied by 12 months the resulting number would be annual gross income for [Klint] of $33,103.45. Exhibit 1, from the August 25, 2021 hearing, indicated that [Klint] had W2 wages of $69,716.76 for 2016. Using the percentage standard of 29% for three children on the 2016 W2 income for [Klint] would have resulted in a child support payment of $1,684.82.

¶10 The circuit court further found that Klint's gross income as of July 2022 was $109,408 per year, and it noted that both parties' incomes had

---

[2] Although the circuit court issued its written decision in July 2022, the relevant statutes have not changed since that time. Accordingly, for convenience, all references to the Wisconsin Statutes are to the 2023-24 version.

increased significantly since the divorce judgment was entered. In addition, the court stated:

> As children grow older, clearly their needs in terms of clothing, food, school[-]related expenses, and extra[]curricular activity expenses increase. At the time of the divorce the children were 10 years, 8 years, and 5 years of age. At the time of the filing of the motion the children were 13 years, 11 years, and 8 years of age. They are now 16 years, 14 years, and 11 years of age.

The court also found that the parties' "cost of living, until recently, has been modest, but nevertheless, has increased." Under these circumstances, the court determined that a substantial change in circumstances had occurred that warranted a modification of child support.

¶11 Next, the circuit court addressed "whether or not this is a shared placement, and if so, what is the number of overnights or equivalent care that the children spend with the parent with less time." The court declined to "award[] any equivalent care" to Klint, but it concluded that he was "entitled to a 25% shared placement child support calculation."

¶12 The circuit court then addressed "what income should be used for [Klint] and what income is to be used for [Amy] for purposes of a revised child support calculation." The court found that Klint's "annual salary is $109,408.00 and that he is a salaried employee, and therefore, [is] not eligible for overtime." The court found that Amy "is guaranteed a salary of $95,000.00, and in the future may also be entitled to commissions." However, the court determined that any additional income from those potential future commissions was "speculative," and it therefore declined to include any amount for commissions in Amy's gross income. Based on the parties' respective gross incomes, the court determined that

Klint's monthly income available for child support was $9,117.33 and Amy's monthly income available for child support was $7,916.66.

¶13 Given those income figures, the circuit court stated that both parties "would be entitled to a high-income payer calculation for three children pursuant to" the relevant provision of the Wisconsin Administrative Code. The court also noted that Klint was "entitled to a 25% shared placement calculation based upon the Court's above analysis."

¶14 The circuit court rejected Klint's argument that he "should be entitled to a reduction of his child support obligation for health, dental, and vision insurance he provides for his children through his employer." The court noted that the MSA required Klint to maintain insurance for the children, but Klint "indicated at the September 22, 2021 hearing that insurance was not going to be an issue in the child support calculation."

¶15 The circuit court also rejected Klint's request "that he and [Amy] begin sharing the right to claim the children for federal and state income tax purposes." The court reasoned:

> This issue was addressed in the parties['] Marital Settlement Agreement … in which [Amy] was granted the right to claim all the children for federal and state income tax purposes, and that such agreement was in lieu of maintenance and/or any equalizing payment to [Amy] for property [division]. It was also the Court's understanding that [Klint] was not asking for any changes in the tax provisions during the hearings conducted regarding this matter.

¶16 Based on the analysis set forth above, the circuit court determined that Klint's monthly child support obligation under the relevant guidelines would be $1,991.31. However, after considering several factors set forth in WIS. STAT.

§ 767.511(1m), the court determined that a deviation from that amount was warranted. Specifically, the court reasoned that Klint had three other children who lived with him, while Amy had one other child who lived with her. *See* § 767.511(1m)(bz). In addition, the court noted that due to Amy's relocation, both parties must incur travel expenses in order to exchange the children. *See* § 767.511(1m)(em). The court also acknowledged that in the future, Amy "could be entitled to receive commissions[,] such that her income could be in a range equivalent to [Klint's] income." *See* § 767.511(1m)(hs). Based on these factors, the court concluded "that a deviation of $491.31 is appropriate such that [Klint's] revised child support obligation will be $1,500.00."

¶17 Finally, the circuit court addressed the effective date of the child support modification. The court explained:

> This is a difficult decision for the Court given the income changes and employment position changes the parties have experienced since the motion was filed on June 11, 2019, which should be the earliest date the modification could be effective to. In addition, the parties have been utilizing the default physical placement schedule significantly more than the regular physical placement schedule of placement of reasonable times upon reasonable notice. Said another way, there have been significant moving parts as it pertains to income and placement of the children. The Court concludes that the effective date of the modification of child support shall be October 1, 2021, as this is a time when both parties were earning their substantially higher salaries.

¶18 The above notwithstanding, the circuit court recognized that Klint "has paid and will pay his $800.00 per month child support payment for the months of October 2021–August 2022, [and] he would have a credit of $800.00 for each of those eleven months such that his past support would be $7,700.00

($700.00 x 11 months)." The court ordered Klint to pay the past support "at the rate of $500.00 per month, commencing October 1, 2022."

¶19 Klint now appeals the circuit court's order modifying his child support obligation. Additional facts are discussed below where necessary to our resolution of Klint's arguments.

## DISCUSSION

### I. Motion to compel discovery

¶20 On appeal, Klint first argues that the circuit court erred by failing to rule on his motion to compel discovery. The record shows that on June 9, 2021, Klint submitted a discovery request to Amy containing 125 requests for admissions, 18 interrogatories, and 10 requests for production of documents. The record also contains a letter dated July 6, 2021, from Amy's attorney to Klint, stating: "Please find enclosed the Response to Joint Petitioner, Klint Trevino's First Set of Requests for Admissions, Interrogatories and Production of Documents in the above action." The response itself is not part of the record on appeal.

¶21 Only July 13, 2021, Klint filed a motion to compel discovery, pursuant to WIS. STAT. § 804.12. In the motion, Klint asserted that the majority of his discovery requests to Amy "went unanswered" and, specifically, that "the majority of Admissions were wrongfully denied, the interrogatories were ignored and the documents requested have not been provided." The motion noted that Amy's attorney "cites over-litigation and is seeking a protective order."

¶22 Amy's attorney subsequently wrote to the circuit court, asserting that "[m]uch of what has been asked" in Klint's discovery requests "has already been

covered." Counsel also cited the "great cost and burden" to Amy of being required to respond to discovery regarding "issues that have already been answered by the Court."

¶23 On August 2, 2021, Amy's attorney filed a motion for a protective order regarding Klint's discovery requests, pursuant to WIS. STAT. § 804.01(3). The motion alleged that Klint's requests for admissions were merely "argumentative questions" and that Amy "has endeavored to answer the questions, but it is clear that these are being propounded for purposes to harass or intimidate and cause undue burden and expenses to" Amy. The motion further asserted that Klint's requests for admissions and interrogatories were "not relevant" and that "these matters have been litigated in custody proceedings at length and denied by the Circuit Court." Amy therefore asked the court to order Klint "to pare down his requests for admissions to non-argumentative versions of facts and to ask questions, if there is something that [Amy] is to admit or deny to." Amy further sought actual attorney fees as a sanction for Klint's "over-trial."

¶24 Klint asserts that the circuit court never ruled on his motion to compel discovery. This court has reviewed the record, and we do not see that the court ever ruled on that motion or on Amy's motion for a protective order. Klint asserts that the court erroneously exercised its discretion in that regard.[3]

¶25 We note, however, that "[n]o judgment shall be reversed or set aside … for error as to any matter of pleading or procedure" unless "the error

---

[3] Throughout his briefs, Klint actually states that the circuit court "abused its discretion." In 1992, our supreme court replaced the phrase "abuse of discretion" with "erroneous exercise of discretion." *See, e.g.*, **Shirk v. Bowling, Inc.**, 2001 WI 36, ¶9 n.6, 242 Wis. 2d 153, 624 N.W.2d 375.

complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment." WIS. STAT. § 805.18(2). Thus, in determining whether the circuit court's alleged error in failing to rule on Klint's motion to compel discovery requires reversal, "we must determine whether the error was prejudicial or harmless." *See Hannemann v. Boyson*, 2005 WI 94, ¶57, 282 Wis. 2d 664, 698 N.W.2d 714. "For an error 'to affect the substantial rights' of a party, there must be a reasonable possibility that the error contributed to the outcome of the action or proceeding at issue." *Martindale v. Ripp*, 2001 WI 113, ¶32, 246 Wis. 2d 67, 629 N.W.2d 698.

¶26 Klint has failed to develop an argument that the circuit court's apparent failure to rule on his motion to compel discovery affected his substantial rights. He merely asserts that the court's failure to rule on the motion "hindered [his] ability to try [his] case." He does not explain, specifically, what discovery should have been produced and how the absence of that discovery affected his ability to oppose Amy's motion to modify child support. Moreover, we observe that the circuit court held multiple days of evidentiary hearings on Amy's motion, during which both parties testified and presented other evidence. Klint does not explain what evidence his motion to compel discovery would have revealed that was not otherwise presented to the court during those hearings or how that evidence would have affected the court's decision.

¶27 Under these circumstances, Klint has not presented a developed argument showing how the circuit court's alleged error in failing to rule on his motion to compel discovery affected his substantial rights. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (explaining that this court need not address undeveloped arguments); *Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82

(explaining that this court will not abandon its neutrality to develop arguments for a party). Accordingly, Klint has not shown that this issue provides a basis to reverse the circuit court's decision.

## II. Subpoena duces tecum

¶28 Klint next argues that the circuit court erroneously exercised its discretion by failing to "grant or deny [his] subpoena duces tecum to gain discovery pursuant to" WIS. STAT. § 805.07(2)(a). In support of this argument, Klint asserts that Amy submitted two income and expense statements in the circuit court, one showing monthly childcare expenses of $450 and another showing monthly childcare expenses of $900. Based on that discrepancy, Klint apparently believes that some of Amy's claimed childcare expenses were being used for Amy's youngest child, a child that Amy had with another man following the parties' divorce.

¶29 Consequently, on December 13, 2021, Klint filed a proposed subpoena duces tecum in the circuit court, seeking an order requiring the Dane County Circuit Court to "release [Amy's] expense statement" that was filed in the Dane County family court case regarding Amy's youngest child. The circuit court declined the proposed subpoena on July 25, 2022—the same day that the court granted Amy's motion to modify child support—with the notation, "Decision on child support modification completed."

¶30 As with Klint's first argument on appeal, we conclude Klint has failed to present a developed argument showing how the circuit court's failure to grant his proposed subpoena duces tecum affected his substantial rights. *See* WIS. STAT. § 805.18(2). Klint apparently believes that the document in question would have shown that Amy's claimed childcare expenses included expenses for her

11

youngest child. The circuit court, however, did not base its decision to modify child support on Amy's claimed childcare expenses. Rather, as summarized above, the court concluded that a modification of child support was warranted based on: (1) the amount of time that had passed since the entry of the prior child support order; (2) both parties' increased incomes; and (3) the children's ages and resultant increases in expenses for clothing, food, school, and extracurricular activities.

¶31 After calculating Klint's child support obligation using the high-income payer formula, the circuit court determined that a deviation from guideline child support was appropriate based on, among other things, the fact that both Klint and Amy had other children to support. *See* WIS. STAT. § 767.511(1m)(bz). Despite acknowledging that fact, the court did not base its calculation of Klint's child support obligation on the amount of childcare expenses listed on either of Amy's income and expense statements.

¶32 On this record, Klint has failed to show how the circuit court's alleged error in failing to grant his proposed subpoena duces tecum affected his substantial rights. Again, this court need not address undeveloped arguments. *Pettit*, 171 Wis. 2d at 646-47.

## III. Retroactive child support modification

¶33 Next, Klint contends that the circuit court erred by "retroactively appl[ying] a change in child support when [Amy] failed to properly file a motion pursuant to WIS. STAT. § 802.09." Klint argues that because "no proper motion was before the court[,] the court reasonably should have dismissed the motion or made the change effective with the date of the order."

12

¶34    As noted above, in May 2018, Amy filed a motion seeking permission to relocate with the children to the Baraboo or Madison area. Later that month, Amy filed an amended motion seeking permission to relocate to the Baraboo area. Neither of those motions sought a modification of child support. However, on June 11, 2019, Amy filed a motion "amending the pleadings from the original filings in April 2018 to specifically request [that] the child support be modified."[4]

¶35    Klint subsequently filed two motions to dismiss Amy's motion to modify child support. The first motion to dismiss, filed in March 2021, asserted that Amy was required "to adhere to the agreements made in the MSA and on the record during the final judgment in conjunction with the MSA." The second motion to dismiss, filed in January 2022, asserted that Amy's attempt to amend her relocation motion to add a request for modification of child support was improper under WIS. STAT. § 802.09, the statute governing the amendment of pleadings.

¶36    During a hearing on January 18, 2022, the circuit court orally denied Klint's second motion to dismiss Amy's motion to modify child support.[5] The court explained:

---

[4] We presume that the reference to "April 2018" in Amy's June 11, 2019 motion should have been "May 2018," as the record does not contain any motions or pleadings filed by Amy in April 2018.

[5] It is not clear whether the circuit court ever separately denied Klint's first motion to dismiss. We note, however, that Klint does not renew the argument raised in that motion on appeal. *See* **A.O. Smith Corp. v. Allstate Ins. Cos.**, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) (stating that an issue raised in the circuit court, but not raised on appeal, is deemed abandoned).

> The Court is going to deny the motion to dismiss, in that we have had, now, two hearing on the issue of child support. I have gone through various pleadings. Clearly, the motion that I have referenced, [Amy's June 11, 2019 motion], is the motion to modify child support. Currently, it does have slightly confusing language, but when I look at this file in it[]s entirety, it's clear to me that, that's the motion I am deciding, and that's the motion we've been having testimony on.

> So, for the record, I am—and the motion is not labelled as an amended motion, it's just titled as a motion, although the title, I understand, of a pleading is not controlling. But, it's clear to me that we're here on a motion by [Amy] to modify child support. And, again, we've been on this issue for, now, the third time. So, the motion to dismiss is denied.

As previously discussed, the court later granted Amy's motion to modify child support and made the modification retroactive to October 1, 2021.

¶37 Klint now argues that the circuit court erred by ordering a retroactive modification of child support because Amy did not properly amend her prior motion in order to add a request to modify child support. Klint cites WIS. STAT. § 802.09(1), which allows a party to amend a pleading

> once as a matter of course at any time within 6 months after the summons and complaint are filed or within the time set in a scheduling order under [WIS. STAT. §] 802.10. Otherwise a party may amend the pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given at any stage of the action when justice so requires.

Klint argues that Amy had already amended her relocation motion once before she filed the amended motion including a request to modify child support in June 2019, and he further asserts that the June 2019 amendment was filed "outside of the 6-month window." Klint argues that the date Amy moved to modify child support matters because a court "may not revise the amount of child

support … prior to the date that notice of the action is given to the respondent." *See* WIS. STAT. § 767.59(1m).

¶38     In making his argument that Amy never properly filed a motion to modify child support, Klint ignores the language in WIS. STAT. § 802.09(1) permitting a party to amend a pleading "by leave of court" and stating that leave "shall be freely given at any stage of the action when justice so requires."  The decision to grant or deny leave to amend a pleading is within the circuit court's discretion, and we will affirm as long as the court "applied the correct legal standard to the facts of record in a reasonable manner." ***Mach v. Allison***, 2003 WI App 11, ¶20, 259 Wis. 2d 686, 656 N.W.2d 766.  "Although the proper exercise of discretion contemplates that the circuit court explain its reasoning, when the court does not do so, we may search the record to determine if it supports the court's discretionary decision." ***Randall v. Randall***, 2000 WI App 98, ¶7, 235 Wis. 2d 1, 612 N.W.2d 737.

¶39     Here, although the circuit court did not expressly state that it was granting Amy leave to amend her motion under WIS. STAT. § 802.09(1), it is clear that the court did so when it denied Klint's second motion to dismiss.  In its oral ruling denying that motion, the court essentially concluded that justice required granting Amy leave to amend because: (1) the parties had already had multiple hearings regarding the substance of Amy's motion to modify child support; and (2) it was "clear" that Amy was seeking a modification of child support.  In other words, the court concluded that both the court and Klint had notice that Amy was asking the court to modify child support.  Furthermore, Klint did not file his second motion to dismiss until over two and one-half years after Amy filed her amended motion seeking to modify child support, at which point the parties had engaged in discovery and participated in multiple hearings addressing the

substance of that motion. Under these circumstances, we cannot conclude that the court erroneously exercised its discretion by granting Amy leave to amend her motion.

¶40     As Klint concedes, WIS. STAT. § 767.59(1m) allows a circuit court to make a revision of child support retroactive to the date notice of the motion was given to the respondent. The appellate record shows that Amy's amended motion including her request to modify child support was filed on June 11, 2019. While Klint asserts that he "never received service" of the motion, he cites no evidence in support of that assertion, and he concedes that the motion was "electronically filed" in June 2019.

¶41     Moreover, we note that the circuit court did not actually make its revision of child support effective as of June 11, 2019, the date Amy's motion was filed. Instead, the court ordered that the effective date of the modification would be October 1, 2021—"a time when both parties were earning their substantially higher salaries." Aside from his claim that Amy did not properly amend her motion to add a request to modify child support—which we have rejected for the reasons explained above—Klint develops no argument that the court erred by setting October 1, 2021, as the effective date of the modification. We therefore reject Klint's assertion that the court erred in that regard.

## IV. Decision to modify child support

¶42     Finally, Klint argues that the circuit court erred in several respects by granting Amy's motion to modify child support. A circuit court's decision whether to modify child support is reviewed for an erroneous exercise of discretion, and we will affirm if the court "examined the evidence before it,

16

applied the proper legal standards and reached a reasoned conclusion." ***Rottscheit v. Dumler***, 2003 WI 62, ¶11, 262 Wis. 2d 292, 664 N.W.2d 525 (citation omitted).

¶43     A circuit court may modify a party's child support obligation "only upon a finding of a substantial change in circumstances." WIS. STAT. § 767.59(1f)(a). "The burden of demonstrating a substantial change in circumstances is on the party seeking modification." ***Kelly v. Hougham***, 178 Wis. 2d 546, 556, 504 N.W.2d 440 (Ct. App. 1993). "A circuit court's findings of fact regarding what changes have occurred in the circumstances of two parties will not be disturbed unless they are clearly erroneous." ***Benn v. Benn***, 230 Wis. 2d 301, 307, 602 N.W.2d 65 (Ct. App. 1999). Whether those changes are substantial, however, is a question of law for our independent review, ***id.***, although we may give weight to the circuit court's determination, ***Kelly***, 178 Wis. 2d at 556.

¶44     As an initial matter, Klint contends that the circuit court erred by determining that a substantial change in circumstances had occurred. He contends that "[t]he only change the parties have experienced is that both parties' incomes have [risen] to a level which is higher individually than … it was combined pre-divorce."

¶45     Pursuant to statute, however, based on the amount of time that had elapsed since the last child support order, there was a rebuttable presumption that a substantial change in circumstances had occurred. *See* WIS. STAT. § 767.59(1f)(b)2. The circuit court properly concluded that presumption had not been rebutted based on: (1) both parties' increased incomes; and (2) the children's increased ages and resultant increases in expenses for clothing, food, school, and

extracurricular activities.[6] Both "[a] change in the needs of the child" and "[a] change in the payer's earning capacity" "may constitute a substantial change of circumstances sufficient to justify revision of" a child support order. Sec. 767.59(1f)(c)2.-3. As such, the court did not err by determining that a substantial change in circumstances had occurred.

¶46 Citing *Lofthus v. Lofthus*, 2004 WI App 65, 270 Wis. 2d 515, 678 N.W.2d 393, Klint argues that the children's increased ages could not constitute a substantial change in circumstances. *Lofthus* involved a father's motion to modify physical placement under circumstances where the applicable statute created "a rebuttable presumption for maintaining the current placement schedule." *Id.*, ¶19. In concluding that the father had failed to overcome that presumption, we reasoned, "If we declared the natural aging process of the children to be a substantial change warranting placement modification, there would *always* be a basis for modification in every case. The legislature, by creating a presumption of the status quo, meant to raise the bar." *Id.*, ¶22.

¶47 *Lofthus* is materially distinguishable from this case because it involved a statutory presumption in favor of the status quo, while this case involves a statutory presumption in favor of a substantial change in circumstances. Moreover, the circuit court in this case did not simply determine that "the natural aging process of the children," in and of itself, constituted a substantial change in circumstances. *See id.* Rather, the court reasoned that the children's increased ages has resulted in increased expenses. While Klint appears to suggest that the

---

[6] Contrary to Klint's assertion, the circuit court did not "cite[] Klint's remarriage as a factor in creating a substantial change."

court's finding in that regard was clearly erroneous, he concedes that Amy "did testify that because the children are older, the cost of food and clothing has increased."

¶48 In addition, while Klint emphasizes that the MSA required Amy to pay "[v]ariable costs, except for uninsured medicals," he cites no legal authority in support of the proposition that the MSA's provision to that effect prevented the circuit court from considering the children's increased expenses when deciding whether a substantial change in circumstances had occurred. As noted above, "[a] change in the needs of the child" "may constitute a substantial change of circumstances sufficient to justify revision of" a child support order. *See* WIS. STAT. § 767.59(1f)(c)2.

¶49 Klint also argues that the circuit court erroneously exercised its discretion in modifying child support by "fail[ing] to consider proper factors." Specifically, he asserts that the court failed to consider his "placement schedule and equivalent care"; his "158-mile round trip needed for placement"; the fact that the MSA required him to pay for the children's health, dental, and vision insurance; and the fact that he had three additional children and was expecting a fourth.

¶50 Contrary to Klint's assertion, the circuit court's written decision shows that the court *did* consider these factors. First, the court addressed and rejected Klint's argument that he was entitled to equivalent care, but it nevertheless determined, based on the parties' use of the default placement schedule in the MSA, that Klint was "entitled to a 25% shared placement child support calculation."

19

¶51 Second, the circuit court expressly considered both parties' travel expenses associated with exchanging the children. The court relied on that factor to support a downward deviation in Klint's monthly child support obligation.

¶52 Third, the circuit court addressed and rejected Klint's argument that "he should be entitled to a reduction of his child support obligation for health, dental, and vision insurance he provides for his children through his employer." The court noted that the MSA required Klint to provide insurance for the children and that Klint had previously told the court "that insurance was not going to be an issue in the child support calculation."

¶53 Fourth, the circuit court acknowledged that Klint "is the father of three other children that live with him" and that he has "the obligation to support those children." Again, the court expressly relied on that factor in determining that a downward deviation in Klint's child support obligation was warranted.

¶54 Thus, the circuit court clearly considered each of the factors that Klint now raises on appeal. The court's rejection of Klint's arguments regarding two of those factors does not show that the court erroneously exercised its discretion. Klint essentially asks us to reweigh the various factors that the court considered in modifying child support. However, our role on appeal is to determine whether the circuit court erroneously exercised its discretion, not to substitute our own discretion for that of the circuit court. *See State v. Rhodes*, 2011 WI 73, ¶26, 336 Wis. 2d 64, 799 N.W.2d 850.

¶55 Klint also argues that the circuit court erred by considering Amy's youngest child—"a child that [Klint is] not legally obligated to take care of"—when deciding whether to modify child support. This argument is misplaced because the court did not increase Klint's child support obligation in order to

provide support for Amy's youngest child. Rather, in determining that a downward deviation from guideline support was warranted, the court properly considered the fact that both parties were responsible for supporting additional children, beyond the three children that they share. *See* WIS. STAT. § 767.511(1m)(bz) (listing "[t]he needs of any person, other than the child, whom either party is legally obligated to support" as a factor that may support a deviation from guideline child support).

¶56    Next, Klint argues that by "agreeing to a fixed sum" for child support in the MSA, the parties "agreed that [they] were deviating from the [child support] guidelines," which prevented the circuit court from later using the guidelines to modify Klint's child support obligation. However, Klint cites no legal authority in support of the proposition that an agreement to deviate from the child support guidelines at the time of divorce prevents a court from subsequently relying on those guidelines when modifying child support after a substantial change in circumstances has occurred. We need not address arguments that are unsupported by references to legal authority.[7]  *See Pettit*, 171 Wis. 2d at 646.

¶57    Klint also argues that the circuit court erred by finding that Amy's gross income was $95,000 per year. Based on the record, we conclude that

---

[7] Klint cites *Nelsen v. Candee*, 205 Wis. 2d 632, 638-44, 556 N.W.2d 784 (Ct. App. 1996), in which we concluded that the circuit court did not erroneously exercise its discretion by deviating from the child support guidelines when setting a modified child support amount. The circuit court in *Nelsen* reasoned "that the support award must reflect the postmarriage history, *including [the wife's] earlier agreement not to apply the guidelines* and her failure to fulfill her original plan of completing her degree and working outside the home." *Id.* at 635 (emphasis added). Although we concluded in *Nelsen* that the circuit court had not erroneously exercised its discretion in that regard, nothing in *Nelsen* stands for the proposition that a court is prohibited from using the guidelines to modify child support in a case where the parties previously agreed to a support amount that was not determined using the guidelines.

finding was not clearly erroneous. Amy specifically testified that her annual salary at her new employer was $95,000. She further testified that she expected to earn commissions in the future, but she was unsure of the structure and timing of those commissions. Amy also submitted documentation from her new employer showing weekly gross pay of $1,826.92, which the circuit court correctly noted would result in annual gross pay of approximately $95,000. Based on this evidence, the court did not clearly err by finding that Amy's gross income was $95,000 per year and that any future income she might earn from commissions was "speculative." In other words, the court's finding in that regard was not against the great weight and clear preponderance of the evidence. *See Phelps v. Physicians Ins. Co. of Wis.*, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615.

¶58 Lastly, Klint argues that the amount of child support ordered by the circuit court is excessive. He relies on *Parrett v. Parrett*, 146 Wis. 2d 830, 841, 432 N.W.2d 664 (Ct. App. 1988), where we concluded that the circuit court did not err by deviating from the child support guidelines because the court "considered the guidelines and concluded that their use would result in a figure so far beyond the child's needs as to be irrational." Like the circuit court in *Parrett*, the court here considered the child support guidelines but ultimately determined that a downward deviation was appropriate. While Klint argues that the court should have deviated further, on the record before us, we cannot conclude that the court's failure to do so constituted an erroneous exercise of discretion.

¶59 Klint also cites *Hubert v. Hubert*, 159 Wis. 2d 803, 816, 465 N.W.2d 252 (Ct. App. 1990), where we stated, "The award of child support must recognize that it is in the best interests of the children that they continue at a standard of living *substantially equal to what they enjoyed before this [divorce]*

22

*action was commenced.*" (Emphasis added.) Klint further cites *Nelsen v. Candee*, 205 Wis. 2d 632, 643, 556 N.W.2d 784 (Ct. App. 1996), where we stated:

> Because [the father] is a high-income payor, the *Parrett* rule informs us that the guideline amount may be more than what the children actually need. But because [the children] are the children of a high-income physician, the *Hubert* corollary suggests that [the father's] child support payments should be high so that the children continue to enjoy the lifestyle that they had *before he and [the mother] divorced.* The issue left for the family court, therefore, was to set an award within these guideposts.

(Emphasis added.)

¶60 Based on *Hubert* and *Nelsen*, Klint appears to argue that, in modifying child support, the relevant question for the circuit court was what amount of support would allow the children to maintain the same standard of living that they had *before the divorce*. Klint then argues that the modified child support award is excessive because, given Amy's increased income, the children "enjoy a higher standard of living in [Amy's] home post-divorce than they ever did during the marriage."

¶61 Klint's argument in this regard is unpersuasive. *Hubert* involved an initial determination of child support at the time of divorce, not a subsequent modification of child support like the one at issue in this case. *See Hubert*, 159 Wis. 2d at 809-11. In that context, it made sense for the court to consider the children's standard of living before the divorce when determining the payer's child support obligation. Although *Nelsen* involved a modification of child support, the father in that case was a "a high-income physician" both during and after the marriage. *See Nelsen*, 205 Wis. 2d at 643. Thus, unlike this case, *Nelsen* did not involve a situation where the payer's income dramatically increased following the parties' divorce.

23

¶62    Accordingly, under the factual circumstances of this case, neither *Hubert* nor *Nelsen* required the circuit court to limit Klint's child support obligation to the amount of support necessary to maintain the children at the same standard of living they had during the parties' marriage. Instead, given the significant increases in both parties' incomes following the divorce, the court could reasonably determine that Klint's child support obligation should reflect the parties' standards of living at the time of the modification. In addition, as noted above, the court specifically—and reasonably—considered the children's increased need for support when setting Klint's revised child support obligation. Under these circumstances, we reject Klint's argument that the court erroneously exercised its discretion by ordering him to pay excessive child support.

    *By the Court.*—Order affirmed.

    This opinion will not be published. *See* Wis. Stat. Rule 809.23(1)(b)5.